1

**LAW OFFICES OF DALE K. GALIPO**
Dale K. Galipo, Esq. (SBN 144074)
dalekgalipo@yahoo.com
Marcel F. Sincich, Esq. (SBN 319508)
msincich@galipolaw.com
21800 Burbank Boulevard, Suite 310
Woodland Hills, CA 91367
Phone: (818) 347-3333
Fax: (818) 347-4118

*Attorneys for Plaintiffs* COLLEEN MANGHANE
and ROBERT MANGHANE

2

3

4

5

6

7

8             **UNITED STATES DISTRICT COURT**

9             **CENTRAL DISTRICT OF CALIFORNIA**

10

11   COLLEEN MANGHANE; and          Case No.: 5:25-cv-00140-WLH-SHK
     ROBERT MANGHANE,

12                                  *Hon. District Judge Wesley L. Hsu*
                                    *Hon. Mag. Judge Shashi H. Kewalramani*
13          Plaintiffs,

14        v.                        **PLAINTIFFS' FIRST AMENDED**
                                    **COMPLAINT FOR DAMAGES**
15   COUNTY OF SAN BERNARDINO;
     and DOES 1-10, inclusive,       1. 42 U.S.C. § 1983 (Unreasonable
16                                      Search and Seizure – Excessive Force)
            Defendants.               2. 42 U.S.C. § 1983 (Denial of Familial
17                                       Relationship – Fourteenth
                                         Amendment)
18                                    3. 42 U.S.C. § 1983 (Municipal Liability
19                                       – Unconstitutional Custom, Practice,
                                         or Policy)
20                                    4. 42 U.S.C. § 1983 (Municipal Liability
21                                       – Failure to Train)
                                      5. 42 U.S.C. § 1983 (Municipal Liability
22                                       – Ratification)
23                                    6. Battery
                                      7. Negligence
24                                    8. Violation of the Bane Act
25
26                                  **DEMAND FOR JURY TRIAL**
27
28

                                    1                    5:25-cv-00140-WLH-SHK

## FIRST AMENDED COMPLAINT FOR DAMAGES

COMES NOW, Plaintiffs COLLEEN MANGHANE and ROBERT MANGHANE for their First Amended Complaint against COUNTY OF SAN BERNARDINO, and DOES 1-10, inclusive, and hereby alleges as follows:

## INTRODUCTION

1.  This civil rights action arises out of the use of excessive and unreasonable force, including deadly force, against AARON JAMES, deceased, by COUNTY OF SAN BERNARDINO Sheriff's Department ("SBSD") Deputies on April 2, 2024, at or around the 17100 block of Forest Hills Dr., Victorville, County San Bernardino, California.

2.  Decedent suffered serious bodily injury and death, as a direct and proximate result of the actions and inactions of Defendants COUNTY, Deputies, and DOES 1-10, inclusive, as well as Sheriff Dicus. Said Defendants are directly liable for Decedent and Plaintiffs' injuries under federal law pursuant to 42 U.S.C. § 1983. Defendant COUNTY is also vicariously liable for the acts and omissions of SBSD Deputies and Defendants DOES 1-10, inclusive, pursuant to Cal. Govt. Code §§ 820 and 815(a).

3.  Defendant Deputies caused various injuries herein directly, or by integrally participating or failing to intervene in the incident, and by engaging in other acts and/or omissions around the time of the incident. Specifically, Defendant Deputies shot Decedent while he was not an immediate threat of death or serious bodily injury, causing his death.

4.  Prior to this deputy-involved shooting incident, Sheriff Dicus and other COUNTY officials failed to adequately train their Defendant Deputies and maintained unconstitutional customs, practices, and policies as described herein. After this deputy-involved shooting incident, Sheriff Dicus and other

COUNTY officials ratified the Defendant Deputies' uses of excessive and unreasonable force.

5.      Defendant COUNTY caused various injuries and are liable under federal law and under the principles set forth in *Monell v. Department of Social Services*, 436 U.S. 658 (1978).

6.      Plaintiffs seek compensatory from Defendants for violating various rights under the United States Constitution in connection with their use of excessive and unreasonable deadly force. Plaintiffs seek punitive damages from the individual Defendants only.

## **THE PARTIES**

7.      At all relevant times, Plaintiffs COLLEEN MANGHANE and ROBERT MANGHANE are individuals residing in County of San Bernardino, California. The MANGHANE Plaintiffs are the court ordered permanent legal guardians and foster parents of Decedent and bring this action individually and as successors-in-interest to Decedent. Plaintiffs seek compensatory and punitive damages under federal and state law.

8.      At all relevant times, Decedent AARON JAMES ("JAMES"), 17-years-old, was an individual residing in County of San Bernardino, California.

9.      Defendant COUNTY OF SAN BERNARDINO ("COUNTY") is a political subdivision of the State of California that is within this judicial district. COUNTY is responsible for the actions, omissions, policies, procedures, practices, and customs of its various agents and agencies, including the COUNTY OF SAN BERNARDINO SHERIFF'S DEPARTMENT ("SBSD") and its agents and employees. At all relevant times, Defendant COUNTY was responsible for assuring that actions, omissions, policies, procedures, practices, and customs of the COUNTY, SBSD, and its employees and agents complied with the laws of the United

1  States and the State of California. At all relevant times, COUNTY was the
2  employer of the individual SBSD officers, agents, and employees including
3  Defendant Deputies and DOES 1-10.

4      10.  At all relevant times, Defendants DOES 1-8, inclusive ("Deputy
5  DOES"), were duly appointed SBSD Deputies and employees and agents of
6  the COUNTY, subject to the oversight and supervision by COUNTY'S elected
7  and non-elected officials and acted within the course and scope of their
8  employment and under color of law, to wit, under the color of statutes,
9  ordinances, regulations, policies, customs, and usage of Defendant COUNTY,
10  SBSD, and under color of the statutes and regulations of the State of
11  California. At all relevant times, each and every Defendant was the agent of
12  each and every other Defendant and had the legal duty to oversee and
13  supervise the hiring, conduct and employment of each and every Defendant.
14  At all relevant times, DOES 1-8, inclusive, were acting with the complete
15  authority and ratification of their principal, Defendant COUNTY.

16      11.  At all relevant times, Defendants DOES 9-10, inclusive
17  ("Supervisor DOES"), are managerial, supervisorial, or policymaking
18  employees of the COUNTY who were acting under color of law within the
19  course and scope of their duties as supervisorial Deputies for the SBSD. DOES
20  9-10, inclusive, were acting with the complete authority of their principal,
21  Defendant COUNTY.

22      12.  Plaintiffs are ignorant of the true names and capacities of
23  Defendant DOES 1-10, inclusive, and therefore sues these defendants by such
24  fictitious names. Plaintiffs will amend the complaint to allege the true names
25  and capacities of those defendants when the same has been ascertained.
26  Plaintiffs are informed and believe, and on that basis alleges, that DOES 1-10,
27  inclusive, and each of them, are responsible in some manner for the
28  occurrences alleged herein and proximately caused Plaintiffs' damages.

13.   On information and belief, Defendant Deputy DOES and Supervisor DOES were at all relevant times residents of the County of San Bernardino.

14.   Plaintiffs are informed and believe, and on that basis alleges, that Defendants acted at all times mentioned herein as the actual and/or ostensible agents, employees, servants, or representatives of each other and, in doing the activities alleged herein, acted within the scope of their authority as agents and employees, and with the permission and consent of each other.

15.   Plaintiffs are informed and believe, and on that basis alleges, that at all times mentioned herein all Defendants acted under color of law, statute, ordinance, regulations, customs and usages of the State of California and the COUNTY.

16.   All Defendants who are natural persons, including DOES 1-10, inclusive, are sued individually and/or in his/her capacity as officers, deputies, investigators, sergeants, captains, commanders, supervisors, and/ or civilian employees, agents, policy makers, and representatives of the COUNTY and the SBSD.

17.   Defendant COUNTY is liable for the nonfeasance and malfeasance of Defendant Deputies and DOES 1-10, inclusive, for the state law claims herein pursuant to Cal. Govt. Code §§ 815.2(a), 815.6. Further, Defendant Deputies and DOES 1-10, inclusive, are liable for their nonfeasance and malfeasance pursuant to Cal. Govt. Code § 820(a).

## JURISDICTION AND VENUE

18.   The Court has jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. §§1331 and 1343(a)(3)-(4) because Plaintiffs assert claims arising under the laws of the United States including 42 U.S.C. §1983 and the Fourth Amendment of the United States Constitution.

19.    This Court has supplemental jurisdiction over Plaintiffs' claims arising under state law pursuant to 28 U.S.C. §1367(a), because those claims are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

20.    Venue in this judicial district is proper pursuant to 28 U.S.C. §1391(b), because all incidents, events, and occurrences giving rise to this action occurred within this district.

21.    On or around September 23, 2024, Plaintiffs served a comprehensive and timely claim for damages with the COUNTY OF SAN BERNARDINO pursuant to applicable sections of the California Government Code.

22.    On November 8, 2024, the COUNTY served a letter of rejection of Plaintiffs' claims.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

23.    Plaintiffs repeat and re-allege each and every allegation of paragraphs 1 through 22, inclusive, as if fully set forth herein.

24.    Plaintiffs sustained damages, including but not limited to the loss of the familial relationship with their foster son, Decedent. Decedent sustained injuries, including but not limited to pain and suffering, when Defendant Deputy DOES used excessive and unreasonable force, including deadly force, and employed negligent tactics against Decedent, causing Decedent great bodily injury and death; and as a result of Defendant COUNTY officials employing unconstitutional policies, training, and subsequent ratification that substantially contributed to the Deputy DOES use of excessive force.

25.    On or about March 31, 2024, Decedent was placed on a 5150 hold for a serious mental health crisis and transported to Desert Valley Hospital.

26.    After approximately three days, on April 2, 2024, when Decedent was scheduled to be transported to a mental health facility, still experiencing a mental health crisis, the 17-year-old Decedent was not prevented from leaving the hospital.

27.    Upon information and belief, Hospital staff called the Sheriff's Department and informed them of Decedent's condition and situation.

28.    Upon information and belief, out of fear and distress, Decedent went to the home of his foster sisters, who resided with different foster parents.

29.    Upon information and belief, Defendant Deputies responded to the house on Forest Hills Drive, Victorville, California, at approximately 12:30 p.m. while Decedent was in the bathroom.

30.    Upon information and belief, Defendant Deputy DOES knew that Decedent was alone in the bathroom, no third parties remained in the house, and Decedent was not a threat to any third party at the time. Further, Deputy DOES did not have any information that any person was harmed or about to be harmed by Decedent.

31.    At this time, and all relevant times thereafter, Decedent never verbally threatened any Deputy DOES, Decedent was not an immediate threat to the safety of any person or Deputy DOES, including not an immediate threat of death or serious bodily injury.

32.    Deputy DOES forcibly breached the bathroom door and charged toward Decedent, then used force including deadly force against Decedent causing him fear, harm, pain, suffering, and death.

33.    Additional Deputy DOES failed to intervene on the use of excessive and unreasonable force being used on Decedent and were integral participants in the use of excessive and unreasonable force being used on Decedent.

34.    Upon information and belief, at the time that Defendant Deputies were shooting at Decedent, no person or Deputy DOES was about to be harmed by Decedent. Decedent did not pose an immediate threat of death or serious bodily injury to any person or Deputy at the time of the shots.

35.    At the time that Defendant Deputies were shooting at Decedent, Decedent had not verbally threatened any of the Deputy DOES, and Decedent never attempted to assault any of the Deputy DOES or anyone else.

36.    As a result of Defendants' actions and inactions, including Deputy DOES use of excessive and unreasonable force, Decedent experienced serious bodily injury, pain and suffering, and death.  As a result of Defendants' actions and inactions, including Deputy DOES use of excessive and unreasonable force, Plaintiffs suffered the loss of their foster son.

37.    Deputy DOES violated their own policies and basic officer training when they used force, including deadly force against Decedent.

38.    The use of force was excessive and objectively unreasonable under the circumstances, especially because the unarmed Decedent did not pose an immediate threat of death or serious bodily injury to anyone at the time the shooting, the Deputy DOES had reasonable alternatives, the Deputy DOES did not give a warning that deadly force would be used, and the 17-year-old Decedent did not verbally threaten any person or deputy.

39.    Plaintiffs seek wrongful death damages individually for the loss of their foster son, and survival damages as successors-in-interest of Decedent, for his pre-death pain and suffering, loss of enjoyment of life, and loss of life. Plaintiffs also seek reasonable attorneys' fees and costs.

40.    Upon information and belief, on July 19, 2006, Decedent was born from biological parents, Arthur James ("James") and Stacy Abbott ("Abbott").

41.    Upon information and belief, Decedent has two (2) biological sisters also born of James and Abbott.

42.    Upon information and belief, on June 13, 2017, at the age of ten (10), after Children and Family Servies ("CFS") received a referral based on the conduct of James and Abbott, and after making reasonable efforts to prevent or eliminate the need for removal, Decedent and his sisters were removed from James and Abbott and were placed in protective custody.

43.    Upon information and belief, the referral to CFS alleged that the conduct of James and Abbott impaired their ability to provide adequate, support and supervision of the children.

44.    Upon information and belief, the reviewing court found convincing evidence that there was a substantial danger to the physical health, safety, protection, or physical or emotional well-being of Decedent and his sisters; and informed James and Abbott that if they failed to visit or contact the children it may result in the termination of reunification services.

45.    Decedent enjoyed being in a new home where he was given food, a clean environment, and safe from physical harm.

46.    Upon information and belief, thereafter, on or about October 5, 2017, Decedent was placed in the care of Plaintiffs.

47.    Upon information and belief, it was projected that Decedent and his sisters could be returned to James and Abbott within twelve (12) months, if James and Abbott complied with the reunification process. They did not.

48.    Upon information and belief, for the entirety of the time that Decedent was in foster care, James and Abbott never visited with the children and never contacted Decedent.

49.    Upon information and belief, James and Abbott failed to show ability and willingness to maintain relationships with the children.

50.    Upon information and belief, Decedent was in a loving home with the Plaintiffs, thriving, abide by the rules, attending school, and receiving services.

51.    Upon information and belief, the reviewing court would have terminated the parental rights of James and Abbott if Plaintiffs adopted Decedent. However, adoption would substantially interfere with Decedent' relationship with his sisters, which was a legal barrier to Plaintiffs. The court also found that Plaintiffs were capable and willing to provide a loving, stable and permanent environment to raise Decedent, and that removal of Decedent from Plaintiffs' home would be detrimental to his emotional wellbeing.

52.    Upon information and belief, on January 16, 2019, the reviewing court having considered the wishes of Decedent, appointed Plaintiffs the legal guardians of Decedent and Decedent's dependency on the state was terminated.

53.    Out of the best interests of Decedent, the MANGHANE Plaintiffs lovingly raised Decedent for approximately five (5) years. For the time period, Plaintiffs were Decedents' parents; Plaintiffs spent time with Decedent daily; Plaintiffs cared for and loved Decedent; Plaintiffs guided, taught, and coached Decedent; Plaintiffs provided medical care and education to Decedent; and Plaintiffs had a close relationship with Decedent.

## FIRST CLAIM FOR RELIEF

**Unreasonable Search and Seizure – Excessive Force (42 U.S.C. § 1983)**

(By Plaintiffs against Defendant Deputy DOES)

54.    Plaintiffs repeat and re-allege each and every allegation of paragraphs 1 through 53, inclusive, as if fully set forth herein.

55.    The Fourth Amendment of the United States Constitution, as applied to State Actors by the Fourteenth Amendment, provides the right of every person to be free from the use of excessive force by Deputies.

56.    At all relevant times, Decedent never threatened any Deputy or other person, was not attempting, willing, or intending to inflict harm on

anyone. Defendant Deputy DOES were not responding to a serious or violent crime, Defendant had no information that any person was harmed or that Decedent had harmed any person, and Defendant did not see a crime in progress upon arrival. Nevertheless, Defendant Deputies used force including deadly force against Decedent, including by repeatedly shooting at Decedent and causing his death.

57. When Defendant Deputies used force, including deadly force against Decedent, Decedent was not an immediate threat to the safety of others, was not an immediate threat of death or serious bodily injury, and there were several less-intrusive alternatives to the use of deadly force available to the Deputy DOES at the time.

58. Deputy DOES were equipped with less-lethal force options that could have been employed instead of lethal force. Then the Deputy DOES should have given the Decedent time to comply after less-lethal force was used instead of escalating the situation to using deadly force. Deputy DOES are trained that they should consider the least intrusive force option, and to only use deadly force when necessary. The Deputy DOES had the time and ability to attempt voluntary compliance without resorting to physical force through de-escalation and tactical communication but failed to do so.

59. Additionally, considering the number of Deputy DOES on scene against the sole Decedent, size, age, and relative strength of the Deputy DOES against the sole 17-year-old Decedent, and whether the Deputy DOES had reason to believe that Decedent was mentally ill or emotionally disturbed, the use of force and deadly force against Decedent was objectively unreasonable.

60. Upon information and belief, the Deputy DOES had the opportunity to provide a verbal warning to Decedent but failed to do so prior to the use of deadly force against Decedent. This shooting violated Deputy DOES training and standard sheriff's deputy training, including violating

FIRST AMENDED COMPLAINT FOR DAMAGES

training with respect to the use of deadly force and with respect to the use of deadly force.

61.    Defendant Deputies caused various injuries as mentioned herein by integrally participating or failing to intervene in the incident, and by engaging in other acts and/or omissions around the time of the incident. Defendants' acts and omissions deprived Decedent of his right to be secure in his person against unreasonable searches and seizures as guaranteed to Decedent under the Fourth Amendment to the United States Constitution and applied to state actors by the Fourteenth Amendment.

62.    As a direct result of the aforesaid acts and omissions of Defendant Deputies, Decedent suffered great physical and mental injury prior to his death, loss of life, and loss of enjoyment of life.

63.    The conduct of Defendant Deputies alleged above was willful, wanton, malicious, and done with reckless disregard for the rights and safety of Decedent and warrants the imposition of exemplary and punitive damages in an amount according to proof.

64.    Defendant Deputy DOES were acting under color of state law and within the course and scope of their employment as law enforcement Deputies for the COUNTY.

65.    Plaintiffs seek survival damages, including but not limited to pre-death pain and suffering, loss of life, and loss of enjoyment of life, under this claim. Plaintiffs also seek reasonable attorneys' fees and costs under this claim.

FIRST AMENDED COMPLAINT FOR DAMAGES

**SECOND CLAIM FOR RELIEF**

**Substantive Due Process (42 U.S.C. § 1983)**

(By Plaintiffs against Defendant Deputy DOES)

66.    Plaintiffs repeat and re-allege each and every allegation in paragraphs 1 through 65 of this Complaint with the same force and effect as if fully set forth herein.

67.    The Substantive Due Process Clause of the Fourteenth Amendment to the United States Constitution guarantees all persons the right to be free from unlawful state interference with their familial relations.

68.    Defendant Deputies intentionally shot the 17-year-old Decedent, causing his death, while he was suffering a mental health crisis, when he was not an immediate threat of death or serious bodily injury to any person at the time, and was alone in a bathroom. Upon information and belief, Defendants failed to give Decedent a verbal warning before they used deadly force against him and took his life. There were less-intrusive means available to the Deputy DOES besides the use of deadly force, including de-escalation and tactical communication to attempt voluntary compliance, and upon information and believe, the Deputy DOES failed to deploy these less-intrusive techniques and/or failed to allow Decedent the time to comply thereafter.

69.    The use of excessive and objectively unreasonable deadly force by Defendant Deputies as alleged above, shocks the conscience, was in deliberate indifference and reckless disregard for Decedent's and Plaintiff's rights, and displayed a purpose to harm Decedent unrelated to a legitimate law enforcement objective. In so doing, Defendant Deputies' conduct constitutes a violation of Plaintiffs' and Decedent's Fourteenth Amendment Substantive Due Process right to be free from unlawful state interference with their familial relationship with their son and beloved family member.

70.    Defendant Deputies' conduct was malicious, oppressive and in reckless disregard for the rights and safety of Decedent and Plaintiffs and warrants the imposition of exemplary and punitive damages as to Defendant Deputies.

71.    As a direct result of the death of Decedent, Plaintiffs has suffered the loss of Decedent's love, care, comfort, society, companionship, assistance, protection, affection, moral support, financial support, and loss of services of Decedent. Plaintiffs seek wrongful death damages under this claim.

72.    Plaintiffs also seek attorneys' fees pursuant to 42 U.S.C. § 1988 and costs of suit.

### **THIRD CLAIM FOR RELIEF**

**Municipal Liability – Unconstitutional Custom, Practice, or Policy (42 U.S.C. § 1983)**

(By Plaintiffs against COUNTY)

73.    Plaintiffs repeat and re-allege each and every allegation of paragraphs 1 through 72 inclusive, as if fully set forth herein.

74.    Defendants Deputy DOES acted under color of state law and within the course and scope of their employment when they intentionally shot and killed Decedent without there being an immediate threat of death or serious bodily injury, thereby using excessive and unreasonable force against Decedent, and Defendants Supervisor DOES acted under color of state law and within the course and scope of their employment by maintaining unconstitutional, customs, practices, and policies. At all relevant times, the Deputy DOES were not responding to a violent crime, there was no crime in progress with Deputy DOES arrived, Decedent did not verbally threaten any person or officer and did not harm any person or officer.

75.    Defendant Deputies acted pursuant to an expressly adopted or fiscal policy or longstanding practice or custom of the Defendants COUNTY and Supervisor DOES.

76.    On information and belief, Defendant Deputies were not disciplined, reprimanded, retrained, provided additional training, suspended, or otherwise penalized in connection with the deprivation of Plaintiffs' or Decedent's rights.

77.    Defendant COUNTY, and Supervisor DOES, together with other COUNTY policymakers and supervisors, maintained, inter alia, the following unconstitutional customs, practices, and policies:

(a)    Using excessive and objectively unreasonable force, including deadly force on unarmed persons who do not pose a risk of immediate death or serious bodily injury to others.

(b)    Providing inadequate training regarding the use of force, including the use of less-lethal force, and deadly force.

(c)    Using deadly force against a person suffering from a mental health crisis.

(d)    Employing and retaining as Deputies, individuals such as Defendant Deputies who upon information and belief, Defendants COUNTY, and DOES 9-10, inclusive, at all times material herein, knew or reasonably should have known had dangerous propensities for abusing their authority and for using excessive force.

(e)    Inadequately supervising, training, controlling, assigning, and disciplining COUNTY law enforcement Deputies, and other personnel, including Defendant Deputies who COUNTY knew or in the exercise of reasonable care should have known, had the aforementioned propensities or character traits.

(f)    Maintaining grossly inadequate procedures for reporting, supervising, investigating, reviewing, disciplining and controlling misconduct by law enforcement Deputies of the COUNTY.

(g)    Announcing that unjustified uses of force are "within policy," including shootings that were later determined in court to be unconstitutional.

(h)    Even where uses of force are determined in court to be unconstitutional, refusing to discipline, terminate, or retrain the Deputies involved.

(i)    Failing to adequately discipline COUNTY law enforcement Deputies for the above-mentioned categories of misconduct, including inadequate discipline and "slaps on the wrist," discipline that is so slight as to be out of proportion with the magnitude of the misconduct, and other inadequate discipline that is tantamount to encouraging misconduct.

(j)    Encouraging, accommodating, or facilitating a "blue code of silence," "blue shield," "blue wall," "blue curtain," "blue veil," or simply "code of silence," pursuant to which Deputies do not report other Deputies' errors, misconduct, or crimes.  Pursuant to this code of silence, if questioned about an incident of misconduct involving another officer, while following the code, the officer being questioned will claim ignorance of the other officer's wrongdoing.

(k)    Maintaining a policy of inaction and an attitude of indifference towards soaring numbers of law enforcement shootings, including failing to discipline, retrain, investigate, terminate, and recommend deputies for criminal prosecution who participate in shootings of unarmed people.

(l)    Otherwise covering up police misconduct.

78.    On information and belief, the COUNTY has deficient policies with respect to the use of force, including deadly force. As a result of deficient polices, the Deputy Defendants shot Decedent while Decedent was alone in a bathroom, not threatening any person, and while not an immediate threat of death or serious bodily injury, resulting in the injuries claimed in this lawsuit.

79.    Defendant COUNTY and Supervisor DOES, together with various other officials, whether named or unnamed, had either actual or constructive knowledge of the deficient policies, practices and customs alleged herein. Despite having knowledge as stated above, these Defendant condoned, tolerated and through actions and inactions thereby ratified such policies. Said Defendant also acted with deliberate indifference to the foreseeable effects and consequences of these policies with respect to the constitutional rights of Plaintiffs and other individuals similarly situated.

80.    By perpetrating, sanctioning, tolerating, and ratifying the outrageous conduct and other wrongful acts, Defendants COUNTY and Supervisor DOES, acted with intentional, reckless, and callous disregard for the Plaintiffs' constitutional rights. Furthermore, the policies, practices, and customs implemented, maintained, and tolerated by Defendants COUNTY and Supervisor DOES, were affirmatively linked to and were a significantly influential force behind Decedent's and Plaintiffs' harm.

81.    By reason of the aforementioned acts and omissions, and as a direct and proximate result of the aforementioned unconstitutional policies and customs, Decedent endured substantial pain and suffering, loss of enjoyment of life, and loss of life, and Plaintiffs have suffered the loss of their foster son and will continue to be deprived for the remainder of their lives.

82.    The acts of each of Defendant Supervisor DOES were willful, wanton, oppressive, malicious, fraudulent, and extremely offensive and unconscionable to any person of normal sensibilities, and therefore warrants

1  imposition of exemplary and punitive damages as to Defendant Supervisor
2  DOES.

3      83.   On information and belief, the following are examples of cases
4  where SBSD Deputies were not disciplined, reprimanded, retrained,
5  suspended, or otherwise penalized in connection with the underlying acts
6  giving rise to the below lawsuits, which indicate that the COUNTY routinely
7  ratifies such behavior, fails to train its Deputies, and maintains a practice of
8  allowing such behavior:

9      a.   In *Estate of Merlin Factor v. County of San Bernardino, et al.*,
10  case number 5:14-cv-01289-DMG-AGR(x), plaintiffs argued that the use of
11  deadly force against the unarmed Merlin Factor in 2013 was unreasonable.
12  The police reports showed that Mr. Factor was unarmed, and the parties
13  settled the case for a high six-figure settlement. Upon information and
14  belief, no deputy was retained, provided additional training, disciplined,
15  suspended, or terminated as a result of this incident.

16      b.   In *Archibald v. County of San Bernardino*, case number 5-16-
17  cv-1128, plaintiff argued that the involved San Bernardino County sheriff's
18  deputy used deadly force against the unarmed Nathanael Pickett in 2015
19  when he posed no immediate threat. In 2018, the jury in that case returned a
20  $33.5 million verdict against Defendant County of San Bernardino and its
21  involved deputy, Kyle Woods. In the Archibald case, there was video
22  footage that captured the shooting incident. However, SBSD accepted
23  Woods' version over what was depicted in the video and rejected the
24  objective evidence. Woods continued to work at SBSD after the Archibald
25  shooting, and then he was involved in another shooting. On January 14,
26  2018, after the Archibald shooting incident, Woods shot Ryan Martinez
27  after Mr. Martinez's vehicle flipped over and while Mr. Martinez was still
28  inside the vehicle. The contentions against Woods were that he shot Mr.

Martinez without giving him commands, without warning, and when there was no imminent or immediate threat of death or serious bodily injury to anyone. After the Martinez shooting, Woods remained employed by the SBSD. That the SBSD retained Woods after he shot Ryan Martinez raises an inference that the County retained and hired deputies who demonstrated a propensity for abusing their authority.

c.      In *T.M. (Phillips) v. County of San Bernardino, et al.*, case number 5:18- cv-2532-R-PLA, plaintiff alleged that the shooting of Lajuana Phillips who was driving her vehicle despite not posing an immediate threat of death or serious bodily injury was excessive and unreasonable. In 2018, the parties settled the case for a seven-figure settlement. Upon information and belief, no deputy was retained, provided additional training, disciplined, suspended, or terminated as a result of this incident.

d.      In *Ranero v. County of San Bernardino*, case number 5:16-cv-02655, the COUNTY settled with a man involved in non-fatal deputy shooting that resulting in serious injuries including the loss of the victim's left leg. The COUNTY ratified the deputies' conduct, found the shooting to be "within policy," and failed to reprimand, retrain, or otherwise penalize the deputies for their conduct.

e.      In *Young v. County of San Bernardino, et al.*, case number 5:15-CV- 01102-JGB-SP, plaintiff argued that the 2014 shooting of Keivon Young was excessive and unreasonable. In 2016 a jury agreed and awarded a high six-figure verdict in plaintiff's favor. Upon information and belief, no deputy was retained, provided additional training, disciplined, suspended, or terminated as a result of this incident.

f.      In *M.A., et al. v. County of San Bernardino, et al.*, case number 8:20-c-00567-JFW-SHK, plaintiffs alleged that the 2019 fatal shooting of Darrell Allen, Jr. was excessive and unreasonable when deputies

1   intentionally shot Mr. Allen several times without warning, and when Mr.

2   Allen was not an immediate threat of death or serious bodily injury. In

3   2021, the parties settled the case for a seven-figure settlement. Upon

4   information and belief, no deputy was retained, provided additional

5   training, disciplined, suspended, or terminated as a result of this incident.

6           g.      In *Brown v. County of San Bernardino*, case number 5:20-cv-

7   01658, Mr. Brown alleged that deputies used excessive and unreasonable

8   force when they shot him several times and when he never threatened any

9   person with a weapon or vehicle. In 2021, the parties settled the case for a

10  high six-figure settlement. Upon information and belief, no deputy was

11  retained, provided additional training, disciplined, suspended, or terminated

12  as a result of this incident.

13          h.      In *Gomez v. County of San Bernardino*, case number 5:13-cv-

14  2185, a lawsuit involving the non-fatal shooting of an unarmed 31-year-old

15  man in his apartment complex after a vehicle pursuit.

16          i.      In *Estate of Allen Kephart v. County of San Bernardino*, CIL

17  VDS 1110314, San Bernardino Superior Court, a lawsuit involving an

18  incident wherein multiple deputies used excessive force against a 43-year-

19  old man, which resulted in death.

20          j.      In *Elio Carrion v. County of San Bernardino*, case number

21  2:06-cv-8210, a lawsuit involving a non-fatal shooting of a passenger.

22          k.      In *Sofflet v. County of San Bernardino*, case number 5:18-cv-

23  279, wherein a seven-figure settlement was reached regarding the in-

24  custody death of a 34-year-old woman.

25          l.      Numerous prior incidents at County San Bernardino detention

26  centers also support Plaintiffs' claims for Municipal Liability in this case.

27  For example, between 2014 and 2016, thirty-three County inmates filed

28  lawsuits alleging torture by the County and its deputies' involving

violations of 42 USC 1983. (Case Nos. 5:15-cv-02515-JGB-DTB). Johnny Alcala and 14 other inmates sued the County, and David Smith filed his own lawsuit (5:15-cv-02513-JGB-DTB), going back to years of torture by COUNTY correctional officers.  Moreover, the ACLU also brought a class action lawsuit alleging unconstitutional practice of LGBT inmates at the County's WVDC. (Case No. 14-2171-JGB-SP). The ACLU's lawsuit addressed the trouble of WVDC in denying services in unconstitutional manner, including failure to make safety checks as mandated by Title 15, and the suit represented approximately 600 individuals.

84.    Within a month prior to this incident, SBSD deputies shot and killed another teenage boy who was experiencing mental health crises. On March 9, 15-year-old Ryan Gainer, who was autistic, was fatally shot in Apple Valley after Deputies Wyatt Eisenbrey and Brandon Clancy officers responded to the family home.

85.    Accordingly, Defendants COUNTY and Supervisor DOES, each are liable for compensatory damages under 42 U.S.C. § 1983.

86.    Plaintiffs bring this claim as successor-in-interest to Decedent and seek survival damages. Plaintiffs also seek reasonable attorneys' fees and costs under this claim.

## FOURTH CLAIM FOR RELIEF

### Municipal Liability for Failure to Train (42 U.S.C. § 1983)

(By Plaintiffs against COUNTY)

87.    Plaintiffs repeat and re-allege each and every allegation in paragraphs 1 through 86 of this Complaint with the same force and effect as if fully set forth herein.

FIRST AMENDED COMPLAINT FOR DAMAGES

88.    At all relevant times, Defendant DOES 1-10, inclusive, acted under color of law and within the course and scope of their employment with the COUNTY.

89.    The acts of Defendant Deputies as described herein, deprived Decedent and Plaintiffs of their particular rights under the United States Constitution, including when they intentionally shot Decedent without justification, causing his death.

90.    On information and belief, Defendant COUNTY failed to properly and adequately train Defendant Deputies including with regard to the use of deadly force, especially with regard to a subject suffering a mental health crisis. The training policies of Defendants COUNTY and Supervisor DOES were not adequate to train its deputies to handle the usual and recurring situations with which they must deal.

91.    On information and belief, the COUNTY failed to train their deputies not to shoot at children suffering a mental health crisis while they are not an immediate threat of death or serious bodily injury. As a result of this deficient policy and deficient training, the deputy Defendants shot Decedent, resulting in the injuries claimed in this lawsuit.

92.    The training policies of Defendant COUNTY were not adequate to train its Deputies to handle the usual and recurring situations with which they must deal, including de-escalation techniques, tactical communication, tactical positioning, and both the use of less than lethal and lethal force.

93.    Defendants COUNTY and Supervisor DOES were deliberately indifferent to the obvious consequences of its failure to train its Deputies adequately, including with respect to the use of force.

94.    The failure of Defendants COUNTY and Supervisor DOES to provide adequate training caused the deprivation of Plaintiffs' and Decedent's rights by Defendant Deputies; that is, Defendants' failure to train is so closely

related to the deprivation of Plaintiffs' and Decedent's rights as to be the moving force that caused the ultimate injury.

95.    The following are only a few examples of cases where the COUNTY failed to train its Deputies, and the involved Deputies were not disciplined, reprimanded, retrained, suspended, or otherwise penalized in connection with the underlying acts giving rise to the below lawsuits, which indicates that Defendant COUNTY failed to adequately train its Deputies, more specifically the failure to train with regard to the use of force:

a.    In *Estate of Merlin Factor v. County of San Bernardino, et al.*, case number 5:14-cv-01289-DMG-AGR(x), plaintiffs argued that the use of deadly force against the unarmed Merlin Factor in 2013 was unreasonable. The police reports showed that Mr. Factor was unarmed, and the parties settled the case for a high six-figure settlement. Upon information and belief, no deputy was retained, provided additional training, disciplined, suspended, or terminated as a result of this incident.

b.    In *Archibald v. County of San Bernardino*, case number 5-16-cv-1128, plaintiff argued that the involved San Bernardino County sheriff's deputy used deadly force against the unarmed Nathanael Pickett in 2015 when he posed no immediate threat. In 2018, the jury in that case returned a $33.5 million verdict against Defendant County of San Bernardino and its involved deputy, Kyle Woods. In the Archibald case, there was video footage that captured the shooting incident. However, SBSD accepted Woods' version over what was depicted in the video and rejected the objective evidence. Woods continued to work at SBSD after the Archibald shooting, and then he was involved in another shooting. On January 14, 2018, after the Archibald shooting incident, Woods shot Ryan Martinez after Mr. Martinez's vehicle flipped over and while Mr. Martinez was still inside the vehicle. The contentions against Woods were that he shot Mr.

FIRST AMENDED COMPLAINT FOR DAMAGES

Martinez without giving him commands, without warning, and when there
was no imminent or immediate threat of death or serious bodily injury to
anyone. After the Martinez shooting, Woods remained employed by the
SBSD. That the SBSD retained Woods after he shot Ryan Martinez raises
an inference that the County retained and hired deputies who demonstrated
a propensity for abusing their authority.

c.    In *T.M. (Phillips) v. County of San Bernardino, et al.*, case
number 5:18- cv-2532-R-PLA, plaintiff alleged that the shooting of Lajuana
Phillips who was driving her vehicle despite not posing an immediate threat
of death or serious bodily injury was excessive and unreasonable. In 2018,
the parties settled the case for a seven-figure settlement. Upon information
and belief, no deputy was retained, provided additional training, disciplined,
suspended, or terminated as a result of this incident.

d.    In *Ranero v. County of San Bernardino*, case number 5:16-cv-
02655, the COUNTY settled with a man involved in non-fatal deputy
shooting that resulting in serious injuries including the loss of the victim's
left leg. The COUNTY ratified the deputies' conduct, found the shooting to
be "within policy," and failed to reprimand, retrain, or otherwise penalize
the deputies for their conduct.

e.    In *Young v. County of San Bernardino, et al.*, case number
5:15-CV- 01102-JGB-SP, plaintiff argued that the 2014 shooting of Keivon
Young was excessive and unreasonable.  In 2016 a jury agreed and awarded
a high six-figure verdict in plaintiff's favor. Upon information and belief,
no deputy was retained, provided additional training, disciplined,
suspended, or terminated as a result of this incident.

f.    In *M.A., et al. v. County of San Bernardino, et al.*, case number
8:20-c-00567-JFW-SHK, plaintiffs alleged that the 2019 fatal shooting of
Darrell Allen, Jr. was excessive and unreasonable when deputies

intentionally shot Mr. Allen several times without warning, and when Mr. Allen was not an immediate threat of death or serious bodily injury. In 2021, the parties settled the case for a seven-figure settlement. Upon information and belief, no deputy was retained, provided additional training, disciplined, suspended, or terminated as a result of this incident.

g.      In *Brown v. County of San Bernardino*, case number 5:20-cv-01658, Mr. Brown alleged that deputies used excessive and unreasonable force when they shot him several times and when he never threatened any person with a weapon or vehicle. In 2021, the parties settled the case for a high six-figure settlement. Upon information and belief, no deputy was retained, provided additional training, disciplined, suspended, or terminated as a result of this incident.

h.      In *Gomez v. County of San Bernardino*, case number 5:13-cv-2185, a lawsuit involving the non-fatal shooting of an unarmed 31-year-old man in his apartment complex after a vehicle pursuit.

i.      In *Estate of Allen Kephart v. County of San Bernardino*, CIL VDS 1110314, San Bernardino Superior Court, a lawsuit involving an incident wherein multiple deputies used excessive force against a 43-year-old man, which resulted in death.

j.      In *Elio Carrion v. County of San Bernardino*, case number 2:06-cv-8210, a lawsuit involving a non-fatal shooting of a passenger.

k.      In *Sofflet v. County of San Bernardino*, case number 5:18-cv-279, wherein a seven-figure settlement was reached regarding the in-custody death of a 34-year-old woman.

l.      Numerous prior incidents at County San Bernardino detention centers also support Plaintiffs' claims for Municipal Liability in this case. For example, between 2014 and 2016, thirty-three County inmates filed lawsuits alleging torture by the County and its deputies' involving

violations of 42 USC 1983. (Case Nos. 5:15-cv-02515-JGB-DTB). Johnny Alcala and 14 other inmates sued the County, and David Smith filed his own lawsuit (5:15-cv-02513-JGB-DTB), going back to years of torture by COUNTY correctional officers. Moreover, the ACLU also brought a class action lawsuit alleging unconstitutional practice of LGBT inmates at the County's WVDC. (Case No. 14-2171-JGB-SP). The ACLU's lawsuit addressed the trouble of WVDC in denying services in unconstitutional manner, including failure to make safety checks as mandated by Title 15, and the suit represented approximately 600 individuals.

96.    As a direct and proximate result of the aforementioned conduct, Decedent endured severe pain and suffering loss of enjoyment of life, and loss of life. Further, as a direct and proximate result of the aforementioned conduct, Plaintiffs endured the loss of their foster child, including being deprived of the life-long love, companionship, comfort, support, society, care, and sustenance of Decedent, and will continue to be so deprived for the remainder of their natural life.

97.    Accordingly, Defendants COUNTY and Supervisor DOES are liable to Plaintiffs for compensatory damages under 42 U.S.C. § 1983.

98.    Plaintiffs bring this claim as successor-in-interest to Decedent and seek survival damages. Plaintiffs also seek reasonable attorneys' fees and costs under this claim.

## FIFTH CLAIM FOR RELIEF

### Municipal Liability – Ratification (42 U.S.C. § 1983)

(By Plaintiffs against COUNTY)

99.    Plaintiffs repeat and re-allege each and every allegation in paragraphs 1 through 98 of this Complaint with the same force and effect as if fully set forth herein.

100.  At all relevant times, Defendant DOES 1-10, inclusive, acted under color of law and within the course and scope of their employment with the COUNTY.

101.  The acts of Defendant Deputies as described herein, deprived Decedent and Plaintiffs of their particular rights under the United States Constitution, including when they intentionally shot Decedent without justification, causing his death.

102.  Upon information and belief, a final policymaker, including Defendant Supervisor DOES, acting under color of law, has a history of ratifying the unconstitutional and unreasonable uses of force, including deadly force.

103.  Upon information and belief, a final policymaker for the COUNTY, acting under color of law, who had final policymaking authority concerning the acts of Defendant Deputies and the bases for them, ratified the acts and omissions of Defendant Deputies and the bases for them.  Upon information and belief, the final policymaker knew of and specifically approved of Defendants' acts, specifically approving the SBSD Deputies' shooting of the 17-year-old boy suffering a mental health crisis when he was not an immediate threat of death or serious bodily injury.

104.  On information and belief, the official policies with respect to the incident are that Deputies are not to use deadly force against an individual unless the individual poses an immediate risk of death or serious bodily injury to the Deputies or others. The Deputies' actions deviated from these official policies because Decedent did not pose an immediate threat of death or serious bodily injury to the involved Deputies or anyone else.

105.  Upon information and belief, a final policymaker(s) has determined (or will determine) that the acts of Defendant Deputies were "within policy."

106. The following are only a few examples of cases where SBSD Deputies were not disciplined, reprimanded, retrained, suspended, or otherwise penalized in connection with the underlying acts giving rise to the below lawsuits, which indicate that Defendant COUNTY routinely ratifies such behavior:

a. In *Estate of Merlin Factor v. County of San Bernardino, et al.*, case number 5:14-cv-01289-DMG-AGR(x), plaintiffs argued that the use of deadly force against the unarmed Merlin Factor in 2013 was unreasonable. The police reports showed that Mr. Factor was unarmed, and the parties settled the case for a high six-figure settlement. Upon information and belief, no deputy was retained, provided additional training, disciplined, suspended, or terminated as a result of this incident.

b. In *Archibald v. County of San Bernardino*, case number 5-16-cv-1128, plaintiff argued that the involved San Bernardino County sheriff's deputy used deadly force against the unarmed Nathanael Pickett in 2015 when he posed no immediate threat. In 2018, the jury in that case returned a $33.5 million verdict against Defendant County of San Bernardino and its involved deputy, Kyle Woods. In the Archibald case, there was video footage that captured the shooting incident. However, SBSD accepted Woods' version over what was depicted in the video and rejected the objective evidence. Woods continued to work at SBSD after the Archibald shooting, and then he was involved in another shooting. On January 14, 2018, after the Archibald shooting incident, Woods shot Ryan Martinez after Mr. Martinez's vehicle flipped over and while Mr. Martinez was still inside the vehicle. The contentions against Woods were that he shot Mr. Martinez without giving him commands, without warning, and when there was no imminent or immediate threat of death or serious bodily injury to anyone. After the Martinez shooting, Woods remained employed by the

SBSD. That the SBSD retained Woods after he shot Ryan Martinez raises an inference that the County retained and hired deputies who demonstrated a propensity for abusing their authority.

c.      In *T.M. (Phillips) v. County of San Bernardino, et al.*, case number 5:18- cv-2532-R-PLA, plaintiff alleged that the shooting of Lajuana Phillips who was driving her vehicle despite not posing an immediate threat of death or serious bodily injury was excessive and unreasonable. In 2018, the parties settled the case for a seven-figure settlement. Upon information and belief, no deputy was retained, provided additional training, disciplined, suspended, or terminated as a result of this incident.

d.      In *Ranero v. County of San Bernardino*, case number 5:16-cv-02655, the COUNTY settled with a man involved in non-fatal deputy shooting that resulting in serious injuries including the loss of the victim's left leg. The COUNTY ratified the deputies' conduct, found the shooting to be "within policy," and failed to reprimand, retrain, or otherwise penalize the deputies for their conduct.

e.      In *Young v. County of San Bernardino, et al.*, case number 5:15-CV- 01102-JGB-SP, plaintiff argued that the 2014 shooting of Keivon Young was excessive and unreasonable.  In 2016 a jury agreed and awarded a high six-figure verdict in plaintiff's favor.  Upon information and belief, no deputy was retained, provided additional training, disciplined, suspended, or terminated as a result of this incident.

f.      In *M.A., et al. v. County of San Bernardino, et al.*, case number 8:20-c-00567-JFW-SHK, plaintiffs alleged that the 2019 fatal shooting of Darrell Allen, Jr. was excessive and unreasonable when deputies intentionally shot Mr. Allen several times without warning, and when Mr. Allen was not an immediate threat of death or serious bodily injury. In 2021, the parties settled the case for a seven-figure settlement. Upon

1    information and belief, no deputy was retained, provided additional

2    training, disciplined, suspended, or terminated as a result of this incident.

3        g.    In *Brown v. County of San Bernardino*, case number 5:20-cv-

4    01658, Mr. Brown alleged that deputies used excessive and unreasonable

5    force when they shot him several times and when he never threatened any

6    person with a weapon or vehicle. In 2021, the parties settled the case for a

7    high six-figure settlement. Upon information and belief, no deputy was

8    retained, provided additional training, disciplined, suspended, or terminated

9    as a result of this incident.

10       h.    In *Gomez v. County of San Bernardino*, case number 5:13-cv-

11   2185, a lawsuit involving the non-fatal shooting of an unarmed 31-year-old

12   man in his apartment complex after a vehicle pursuit.

13       i.    In *Estate of Allen Kephart v. County of San Bernardino*, CIL

14   VDS 1110314, San Bernardino Superior Court, a lawsuit involving an

15   incident wherein multiple deputies used excessive force against a 43-year-

16   old man, which resulted in death.

17       j.    In *Elio Carrion v. County of San Bernardino*, case number

18   2:06-cv-8210, a lawsuit involving a non-fatal shooting of a passenger.

19       k.    In *Sofflet v. County of San Bernardino*, case number 5:18-cv-

20   279, wherein a seven-figure settlement was reached regarding the in-

21   custody death of a 34-year-old woman.

22       l.    Numerous prior incidents at County San Bernardino detention

23   centers also support Plaintiffs' claims for Municipal Liability in this case.

24   For example, between 2014 and 2016, thirty-three County inmates filed

25   lawsuits alleging torture by the County and its deputies' involving

26   violations of 42 USC 1983. (Case Nos. 5:15-cv-02515-JGB-DTB). Johnny

27   Alcala and 14 other inmates sued the County, and David Smith filed his

28   own lawsuit (5:15-cv-02513-JGB-DTB), going back to years of torture by

COUNTY correctional officers. Moreover, the ACLU also brought a class action lawsuit alleging unconstitutional practice of LGBT inmates at the County's WVDC. (Case No. 14-2171-JGB-SP). The ACLU's lawsuit addressed the trouble of WVDC in denying services in unconstitutional manner, including failure to make safety checks as mandated by Title 15, and the suit represented approximately 600 individuals.

107.  By reason of the aforementioned acts and omissions, Defendants COUNTY and Supervisor DOES are liable to Plaintiffs for compensatory damages under 42 U.S.C. § 1983.

108.  Plaintiffs bring this claim as successor-in-interest to Decedent and seek survival damages. Plaintiffs also seek reasonable attorneys' fees and costs under this claim.

## SIXTH CLAIM FOR RELIEF

### Battery (Cal. Govt. Code §§ 815, 820 and California Common Law)

(Plaintiffs against Defendant Deputy DOES, directly; and COUNTY vicariously)

109.  Plaintiffs repeat and reallege each and every allegation in paragraphs 1 through 108 of this Complaint with the same force and effect as if fully set forth herein.

110.  At all relevant times, Defendant Deputy DOES were working as Deputies for the SBSD and were acting within the course and scope of their duties as Deputies for the COUNTY.

111.  When Defendant Deputies were detaining Decedent, Decedent was not threatening any person, and Decedent never verbally threatened any Defendant Deputies.

112.  Decedent was not attempting, willing, or intending to inflict harm on anyone.  Defendants were not responding to a serious or violent crime, Defendants did not witness a crime in progress upon arrival, Defendants had

no information that anyone had been hurt or injured or that Decedent had hurt or injured someone. Decedent was alone in a bathroom when Defendant Deputies used force against Decedent, including when they repeatedly shot Decedent without justification.

113. The shooting was excessive and objectively unreasonable, especially because throughout the incident, Decedent presented no immediate threat to the safety of the Deputies or others, including not an immediate threat of death or serious bodily injury to any Deputy or other person. Further, Defendants' shooting and use of force violated their training, standard law enforcement training, and generally accepted law enforcement standards.

114. Defendant Deputies had no legal justification for using force against Decedent, and the use of force was unreasonable and non-privileged. Moreover, Decedent did not knowingly or voluntarily consent to the use of force against him.

115. Defendant Deputies caused various injuries as mentioned herein and are liable either because they directly harmed Decedent or by integrally participating or failing to intervene in the incident, and by engaging in other acts and/or omissions around the time of the incident. Defendants' acts and omissions resulted in harmful and offensive touching of Plaintiffs.

116. As a direct and proximate result of the aforesaid acts and omissions of Defendant Deputies, Decedent suffered great physical and mental injury, as well as fear and emotional distress related to his physical injuries, pain and suffering, humiliation, anguish, and death.

117. The conduct of Defendant Deputies was malicious, wanton, oppressive, and accomplished with a conscious disregard for the rights of Decedent, entitling Plaintiffs to an award of exemplary and punitive damages, which Plaintiffs seeks under this claim.

118.  Defendant Deputies are directly liable for their actions and inactions pursuant to Cal. Govt. Code § 820(a).

119.  The Defendant COUNTY is vicariously liable for the wrongful acts and omissions of Defendant Deputies pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employee's act would subject him or her to liability.

120.  Plaintiffs seek compensatory damages and bring this wrongful death claim as successor-in-interest to Decedent against Defendant and seeks survival and wrongful death damages under this claim.  Plaintiffs also seek reasonable costs and funeral and burial expenses on this claim.

## SEVENTH CLAIM FOR RELIEF

**Negligence (Cal. Govt. Code §§ 815, 820 and California Common Law)**

(Plaintiffs against Defendant Deputy DOES directly; and COUNTY vicariously)

121.  Plaintiffs repeat and reallege each and every allegation in paragraphs 1 through 120 of this Complaint with the same force and effect as if fully set forth herein.

122.  Law enforcement officers have a duty and responsibility to act reasonably, care for, protect, and use only reasonable and necessary force against a person. Upon information and belief, as alleged herein, Defendant Deputy DOES breached their duty of care.

123.  Additionally, Sheriff's Deputies, including Defendant Deputy DOES, have a duty to use reasonable care to prevent harm or injury to other. This duty includes but is not limited to the following: using appropriate tactics, giving appropriate commands, giving warnings, allowing time for the subject to understand and comply with appropriate commands and warnings, not using any force unless necessary, using less-intrusive options, acting objectively

FIRST AMENDED COMPLAINT FOR DAMAGES

reasonable when using deadly force, and only using deadly force as a last resort. Defendant Deputy DOES, as alleged herein, breached their duty of care.

124. The actions and inactions of Defendant Deputy DOES were negligent and reckless, including but not limited to:

a)    Defendants' failure to constitutionally respond to Decedent.

b)    Defendants' failure to properly and adequately care for, protect, and transport Decedent.

c)    Defendants' failure to properly and adequately assess the need to use force against Decedent.

d)    Defendants' negligent tactics and handling of the situation with Decedent, including the failure to de-escalate the situation.

e)    Defendants' negligent use of force against Decedent.

f)    Defendants' failure to provide prompt medical care to Decedent.

g)    Negligent tactics and handling of the situation with Decedent, including pre-shooting negligence and the failure to give appropriate commands and warnings.

h)    Defendants' failure to properly train and supervise employees.

i)    Defendants' failure to ensure that adequate numbers of employees with appropriate education and training were available to meet the needs of and protect the rights of Decedent.

j)    Defendants' negligent handling of evidence and witnesses.

k)    Defendants' failure to properly report the incident.

l)    Defendants' failure to de-escalate the situation and use proper communication and commands.

125. As a result of their misconduct, Defendant Deputy DOES are liable for Plaintiffs' and Decedent's injuries on this claim, either because they

were integral participants in the aforementioned conduct, or because they failed to intervene to prevent these violations.

126. As a direct and proximate result of Defendants' conduct as alleged above, and other undiscovered negligent conduct, Decedent suffered the loss of his life, and Plaintiffs have been deprived of the life-long love, companionship, comfort, care, support, society, and sustenance of Decedent, and will continue to be so deprived for the remainder of their natural life.

127. Defendant Deputies are directly liable for their actions and inactions pursuant to Cal. Govt. Code § 820(a).

128. The Defendant COUNTY is vicariously liable for the wrongful acts of Defendant Deputies and DOES 1-8, inclusive, pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employee's act would subject him or her to liability.

129. Plaintiffs seek compensatory damages and bring this wrongful death claim as successor-in-interest to Decedent against Defendants and seeks survival and wrongful death damages under this claim. Plaintiffs also seek reasonable costs and funeral and burial expenses on this claim.

## EIGHTH CLAIM FOR RELIEF

### Violation of the Bane Act (Cal. Civil Code § 52.1)

(Plaintiffs against Defendant Deputy DOES, directly; and COUNTY vicariously)

130. Plaintiffs repeat and reallege each and every allegation in paragraphs 1 through 129 of this Complaint with the same force and effect as if fully set forth herein.

131. California Civil Code, Section 52.1 (the Bane Act), prohibits any person, including a law enforcement officer, from interfering with another person's exercise or enjoyment of his constitutional rights by threats,

intimidation, or coercion, including by the use of unconstitutionally excessive force. Conduct that violates the Fourth Amendment, including the use of excessive force, violates the Bane Act when performed with specific intent to deprive others of their civil rights, which can be inferred by a reckless disregard for the person's civil rights.

132.    Defendant Deputies while working for the COUNTY and acting within the course and scope of their duties as Deputies and under color of law, intentionally committed, and attempted to commit acts of violence against Decedent, including by intentionally and repeatedly shooting Decedent and otherwise using unreasonable force against Decedent. This shooting was excessive and objectively unreasonable and especially reckless because Decedent did not pose an immediate threat of death or serious bodily injury to any person. Further, the Defendants' shooting and use of force violated basic law enforcement training, and generally accepted law enforcement standards. Defendants' shot and killed Decedent without any legal justification.

133.  When Defendant Deputies repeatedly shot Decedent while Decedent was not an immediate threat of death or serious bodily injury, they interfered with Decedent's constitutional rights to be free from unreasonable searches and seizures, to equal protection of the laws, to be free from state actions that shock the conscience, and to life, liberty, and property.

134.    On information and belief, Defendant Deputies intentionally and spitefully committed the above acts to discourage or prevent Decedent from exercising his civil rights, or from enjoying such rights, which he was and is fully entitled to enjoy. Defendant Deputies intentionally interfered with the above constitutional rights of Decedent, and as alleged herein, which can be demonstrated by Defendants' reckless disregard for Decedent's constitutional rights.

FIRST AMENDED COMPLAINT FOR DAMAGES

135.  On information and belief, Decedent reasonably believed and understood that the violent acts committed by Defendant Deputies were intended to discourage him from exercising the above civil rights, to retaliate against him for invoking such rights, or to prevent him from exercising such rights.

136.   The conduct of Defendant Deputies was a substantial factor in causing Decedent's harm, loss, injury, and damages.

137.  The Defendant COUNTY is vicariously liable for the wrongful acts of Defendant Deputies pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employee's act would subject him or her to liability.

138.  Defendant and DOES 9-10 are vicariously liable under California law and the doctrine of *respondeat superior*.

139.  The conduct of Defendant Deputies was malicious, wanton, oppressive, and accomplished with a conscious disregard for Decedent's rights, justifying an award of exemplary and punitive damages as to Defendant Deputies.

140.  Plaintiffs seek compensatory damages for the violations of their and Decedent's rights. Plaintiffs also seek punitive damages, costs, and attorney fees under California Civil Code section 52 *et seq*. as to this claim.

/ / /

First Amended Complaint for Damages

1

## **PRAYER FOR RELIEF**

2        WHEREFORE, Plaintiffs COLLEEN MANGHANE and ROBERT

3    MANGHANE request entry of judgment in their favor against COUNTY OF

4    SAN BERNARDINO; and DOES 1-15, inclusive, as follows:

5        1.    For compensatory damages, according to proof at trial, under federal

6    and State law.

7        2.    For punitive and exemplary damages against the individual defendants

8    in an amount to be proven at trial.

9        3.    For statutory damages.

10       4.    For reasonable attorneys' fees including litigation expenses.

11       5.    For costs of suit and interest incurred herein.

12       6.    For such other and further relief as the Court may deem just and proper.

13

14   DATED: August 29, 2025        **THE LAW OFFICES OF DALE K. GALIPO**

15                            /s/    *Marcel F. Sincich*

16                            Dale K. Galipo, Esq.
                             Marcel F. Sincich, Esq.
17                            *Attorneys for Plaintiffs*

18

19

20

21

22

23

24

25

26

27

28

FIRST AMENDED COMPLAINT FOR DAMAGES

1

## **<u>DEMAND FOR JURY TRIAL</u>**

2

Plaintiffs hereby demand that this action be tried in front of a jury.

3

4

DATED: August 29, 2025          **THE LAW OFFICES OF DALE K. GALIPO**

5

/s/    *Marcel F. Sincich*

6
Dale K. Galipo, Esq.
Marcel F. Sincich, Esq.

7
*Attorneys for Plaintiffs*

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

First Amended Complaint for Damages