Neama Rahmani, Esq. (State Bar No. 223819)
Houman Sayaghi, Esq. (State Bar No. 313695)
Aryan Behnamjou, Esq. (State Bar No. 330488)
WEST COAST TRIAL LAWYERS, APLC
1147 S Hope Street
Los Angeles, California 90015
Phone: (213) 927-3700 | Fax: (213) 927-3701
filings@westcoasttriallawyers.com

Kaveh Navab, Esq. (SBN: 280235)
navablaw@gmail.com
Audrey E. Valli, Esq. (SBN: 360441)
NAVAB LAW, APC
13160 Mindanao Way, Suite 280
Marina Del Rey, California 90292
Telephone: 310-826-1002

*Attorneys for Plaintiffs* ARTHUR JAMES, and STACEY ABBOTT

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ARTHUR JAMES; STACEY ABBOTT;, <br><br> Plaintiffs, <br><br> v. <br><br> COUNTY OF SAN BERNARDINO, BRANDON VENTRE; BLAINE FLEMING; MICHAEL MCMAHON; FERNANDO GONZALEZ; CHRISTOPHER CHERMS; JUSTIN SNYDER; and DOES 1-10, inclusive, <br><br> Defendants. | Case No. 5:25-cv-00140-WLH-SHK <br><br> *Hon. District Judge Wesley L. Hsu* <br> *Hon. Mag. Judge Shashi H. Kewalramani* <br><br> **PLAINTIFFS' THIRD AMENDED FOR DAMAGES** <br><br> 1. 42 U.S.C. § 1983 (Unreasonable Search and Seizure – Excessive Force) <br> 2. 42 U.S.C. § 1983 (Denial of Familial Relationship – Fourteenth Amendment) <br> 3. 42 U.S.C. § 1983 (Municipal Liability – Unconstitutional Custom, Practice, or Policy) <br> 4. 42 U.S.C. § 1983 (Municipal Liability – Failure to Train) <br> 5. 42 U.S.C. § 1983 (Municipal Liability – Ratification) <br> 6. Battery (survival and wrongful death) <br> 7. Negligence (survival and wrongful death) <br> 8. Violation of the Bane Act <br><br> **DEMAND FOR JURY TRIAL** |

PLAINTIFFS' THIRD AMENDED COMPLAINT FOR DAMAGES

## PLAINTIFFS' COMPLAINT FOR DAMAGES

COMES NOW, Plaintiffs ARTHUR JAMES and STACEY ABBOTT ("Plaintiffs") for their Third Amended Complaint against COUNTY OF SAN BERNARDINO, BRANDON VENTRE, BLAINE FLEMING, MICHAEL MCMAHON, FERNANDO GONZALEZ, CHRISTOPHER CHERMS, JUSTIN SNYDER (individuals hereinafter collectively called "Defendant Deputies"), and DOES 1-10, inclusive, and hereby allege as follows:

## INTRODUCTION

1.     This civil rights action arises out of the use of excessive and unreasonable force, including deadly force, against AARON JAMES, deceased, by COUNTY OF SAN BERNARDINO Sheriff's Department ("SBSD") Deputies on April 2, 2024, at or around the 17100 block of Forest Hills Dr., Victorville, County San Bernardino, California.

2.     Defendant COUNTY OF SAN BERNARDINO, by summarily rejecting Plaintiffs' claim for damages, has proved unwilling to accept responsibility for the wrongs committed by its Deputies and other county employees.

3.     Decedent suffered serious bodily injury and death, as a direct and proximate result of the actions and inactions of Defendant COUNTY, Defendant Deputies, and DOES 1-10, inclusive. Said Defendants are directly liable for Decedent and Plaintiffs' injuries under federal law pursuant to 42 U.S.C. § 1983. Defendant COUNTY is also vicariously liable for the acts and omissions of SBSD Deputies and Defendants DOES 1-10, inclusive, pursuant to Cal. Govt. Code §§ 820 and 815(a).

4.     Defendant Deputies caused various injuries herein directly, or by integrally participating or failing to intervene in the incident, and by engaging in other acts and/or omissions around the time of the incident. Specifically,

PLAINTIFFS' THIRD AMENDED COMPLAINT FOR DAMAGES

Defendant Deputies shot Decedent while he was not an immediate threat of death or serious bodily injury, causing his death.

5.    Prior to this deputy-involved shooting incident, COUNTY officials failed to adequately train their Defendant Deputies and maintained unconstitutional customs, practices, and policies as described herein. After this deputy-involved shooting incident, COUNTY officials ratified the Defendant Deputies' uses of excessive and unreasonable force.

6.    The policies and customs behind shootings of civilians such as Decedent are fundamentally unconstitutional and constitute a menace of major proportions to the public. Accordingly, insofar as Plaintiffs herein seek by means of this civil rights action to hold accountable those responsible for the killing of Decedent and to challenge the COUNTY'S unconstitutional policies and practices, this civil rights action is firmly in the public interest. Defendant COUNTY caused various injuries and are liable under federal law and under the principles set forth in *Monell v. Department of Social Services*, 436 U.S. 658 (1978).

7.    Plaintiffs seek compensatory damages from Defendants for violating various rights under the United States Constitution in connection with their use of excessive and unreasonable deadly force. Plaintiffs seek punitive damages from the individual Defendants only.

## THE PARTIES

8.    Plaintiff ARTHUR JAMES and STACEY ABBOTT are, and at all times mentioned herein were, individuals residing in the County of San Bernardino, California, and are the biological parents of DECEDENT Aaron James whose parental rights were never severed or terminated. Plaintiffs ARTHUR JAMES and STACEY ABBOTT sue as successors-in-interest to DECEDENT pursuant to California Code of Civil Procedure §377.30. A declaration pursuant to §377.32 has been filed on behalf of Plaintiffs

ARTHUR JAMES and STACEY ABBOTT. Plaintiffs seek survival damages under federal law.

9. At all relevant times, Decedent AARON JAMES ("JAMES"), 17-years-old, was an individual residing in County of San Bernardino, California.

10. Defendant COUNTY OF SAN BERNARDINO ("COUNTY") is a political subdivision of the State of California that is within this judicial district. COUNTY is responsible for the actions, omissions, policies, procedures, practices, and customs of its various agents and agencies, including the COUNTY OF SAN BERNARDINO SHERIFF'S DEPARTMENT ("SBSD") and its agents and employees. At all relevant times, Defendant COUNTY was responsible for assuring that actions, omissions, policies, procedures, practices, and customs of the COUNTY, SBSD, and its employees and agents complied with the laws of the United States and the State of California. At all relevant times, COUNTY was the employer of the individual SBSD officers, agents, and employees including the individual Defendant Deputies and DOES 1-10.

11. At all relevant times, Defendant BRANDON VENTRE ("VENTRE") was a duly appointed COUNTY Sheriff's Deputy and/or employee or agent of COUNTY, subject to the oversight and supervision of COUNTY'S elected and non-elected officials. At all relevant times, Defendant VENTRE acted under color of law, to wit, under the color of the statutes, ordinances, regulations, policies, customs, and usages of Defendant COUNTY, the SBSD, and under the color of the statutes and regulations of the State of California. At all relevant times, Defendant VENTRE acted within the course and scope of his employment as a COUNTY Sheriff's Deputy. On information and belief, Defendant VENTRE is and was at all relevant times a resident of this judicial district. Defendant VENTRE used excessive and unreasonable deadly force against Decedent.

12. At all relevant times, Defendant BLAINE FLEMING ("FLEMING") was a duly appointed COUNTY Sheriff's Deputy and/or employee or agent of COUNTY, subject to the oversight and supervision of COUNTY'S elected and non-elected officials. At all relevant times, Defendant FLEMING acted under color of law, to wit, under the color of the statutes, ordinances, regulations, policies, customs, and usages of Defendant COUNTY, the SBSD, and under the color of the statutes and regulations of the State of California. At all relevant times, Defendant FLEMING acted within the course and scope of his employment as a COUNTY Sheriff's Deputy. On information and belief, Defendant FLEMING is and was at all relevant times a resident of this judicial district. Defendant FLEMING failed to intervene and integrally participated in the use of excessive and unreasonable deadly force against Decedent.

13. At all relevant times, Defendant MICHAEL MCMAHON ("MCMAHON") was a duly appointed COUNTY Sheriff's Deputy and/or employee or agent of COUNTY, subject to the oversight and supervision of COUNTY'S elected and non-elected officials. At all relevant times, Defendant MCMAHON acted under color of law, to wit, under the color of the statutes, ordinances, regulations, policies, customs, and usages of Defendant COUNTY, the SBSD, and under the color of the statutes and regulations of the State of California. At all relevant times, Defendant MCMAHON acted within the course and scope of his employment as a COUNTY Sheriff's Deputy. On information and belief, Defendant MCMAHON is and was at all relevant times a resident of this judicial district. Defendant MCMAHON failed to intervene and integrally participated in the use of excessive and unreasonable deadly force against Decedent.

14. At all relevant times, Defendant FERNANDO GONZALEZ ("GONZALEZ") was a duly appointed COUNTY Sheriff's Deputy and/or

employee or agent of COUNTY, subject to the oversight and supervision of COUNTY'S elected and non-elected officials. At all relevant times, Defendant GONZALEZ acted under color of law, to wit, under the color of the statutes, ordinances, regulations, policies, customs, and usages of Defendant COUNTY, the SBSD, and under the color of the statutes and regulations of the State of California. At all relevant times, Defendant GONZALEZ acted within the course and scope of his employment as a COUNTY Sheriff's Deputy. On information and belief, Defendant GONZALEZ is and was at all relevant times a resident of this judicial district. Defendant GONZALEZ failed to intervene and integrally participated in the use of excessive and unreasonable deadly force against Decedent.

15.    At all relevant times, Defendant CHRISTOPHER CHERMS ("CHERMS") was a duly appointed COUNTY Sheriff's Deputy and/or employee or agent of COUNTY, subject to the oversight and supervision of COUNTY'S elected and non-elected officials. At all relevant times, Defendant CHERMS acted under color of law, to wit, under the color of the statutes, ordinances, regulations, policies, customs, and usages of Defendant COUNTY, the SBSD, and under the color of the statutes and regulations of the State of California. At all relevant times, Defendant CHERMS acted within the course and scope of his employment as a COUNTY Sheriff's Deputy. On information and belief, Defendant CHERMS is and was at all relevant times a resident of this judicial district. Defendant CHERMS failed to intervene and integrally participated in the use of excessive and unreasonable deadly force against Decedent.

16.    At all relevant times, Defendant JUSTIN SNYDER ("SNYDER") was a duly appointed COUNTY Sheriff's Deputy and/or employee or agent of COUNTY, subject to the oversight and supervision of COUNTY'S elected and non-elected officials. At all relevant times, Defendant SNYDER acted under

color of law, to wit, under the color of the statutes, ordinances, regulations, policies, customs, and usages of Defendant COUNTY, the SBSD, and under the color of the statutes and regulations of the State of California. At all relevant times, Defendant SNYDER acted within the course and scope of his employment as a COUNTY Sheriff's Deputy. On information and belief, Defendant SNYDER is and was at all relevant times a resident of this judicial district. Defendant SNYDER failed to intervene and integrally participated in the use of excessive and unreasonable deadly force against Decedent t.

17.    At all relevant times, Defendants DOES 1-8, inclusive ("Deputy DOES"), were duly appointed SBSD Deputies and employees and agents of the COUNTY, subject to the oversight and supervision by COUNTY'S elected and non-elected officials and acted within the course and scope of their employment and under color of law, to wit, under the color of statutes, ordinances, regulations, policies, customs, and usage of Defendant COUNTY, SBSD, and under color of the statutes and regulations of the State of California. At all relevant times, each and every Defendant was the agent of each and every other Defendant and had the legal duty to oversee and supervise the hiring, conduct and employment of each and every Defendant. At all relevant times, DOES 1-8, inclusive, were acting with the complete authority and ratification of their principal, Defendant COUNTY.

18.    At all relevant times, Defendants DOES 9-10, inclusive ("Supervisor DOES"), are managerial, supervisorial, or policymaking employees of the COUNTY who were acting under color of law within the course and scope of their duties as supervisorial Deputies for the SBSD. DOES 9-10, inclusive, were acting with the complete authority of their principal, Defendant COUNTY.

19.    Plaintiffs are ignorant of the true names and capacities of Defendant DOES 1-10, inclusive, and therefore sues these defendants by such

fictitious names. Plaintiffs will amend the complaint to allege the true names and capacities of those defendants when the same has been ascertained. Plaintiffs are informed and believe, and on that basis alleges, that DOES 1-10, inclusive, and each of them, are responsible in some manner for the occurrences alleged herein and proximately caused Plaintiffs' damages.

20.    On information and belief, Defendant Deputy DOES and Supervisor DOES were at all relevant times residents of the County of San Bernardino.

21.    Plaintiffs are informed and believe and thereon allege that each of the Sheriff's deputies Defendants are intentionally and negligently responsible in some manner for the events and happenings herein referred to, and thereby proximately caused injuries and damages as herein alleged.

22.    Plaintiffs are informed and believe, and on that basis alleges, that Defendants acted at all times mentioned herein as the actual and/or ostensible agents, employees, servants, or representatives of each other and, in doing the activities alleged herein, acted within the scope of their authority as agents and employees, and with the permission and consent of each other.

23.    Plaintiffs are informed and believe, and on that basis alleges, that at all times mentioned herein all Defendants acted under color of law, statute, ordinance, regulations, customs and usages of the State of California and the COUNTY.

24.    All Defendants who are natural persons, including DOES 1-10, inclusive, are sued individually and/or in his/her capacity as officers, deputies, investigators, sergeants, captains, commanders, supervisors, and/ or civilian employees, agents, policy makers, and representatives of the COUNTY and the SBSD.

25.    Defendant COUNTY is liable for the nonfeasance and malfeasance of Defendant Deputies and DOES 1-10, inclusive, for the state

1   law claims herein pursuant to Cal. Govt. Code §§ 815.2(a), 815.6. Further,
2   Defendant Deputies and DOES 1-10, inclusive, are liable for their nonfeasance
3   and malfeasance pursuant to Cal. Govt. Code § 820(a).

4                    **JURISDICTION AND VENUE**

5       26.    The Court has jurisdiction over Plaintiffs' claims pursuant to 28
6   U.S.C. §§1331 and 1343(a)(3)-(4) because Plaintiffs assert claims arising
7   under the laws of the United States including 42 U.S.C. §1983 and the Fourth
8   Amendment of the United States Constitution.

9       27.    This Court has supplemental jurisdiction over Plaintiffs' claims
10  arising under state law pursuant to 28 U.S.C. §1367(a), because those claims
11  are so related to the federal claims that they form part of the same case or
12  controversy under Article III of the United States Constitution.

13      28.    Venue in this judicial district is proper pursuant to 28 U.S.C.
14  §1391(b), because all incidents, events, and occurrences giving rise to this
15  action occurred within this district.

16      29.    On October 1, 2024, Plaintiffs ARTHUR JAMES and STACEY
17  ABBOTT timely filed their claims for damages with COUNTY pursuant to
18  applicable sections of the California Government Code.

19      30.    On November 8, 2024, Plaintiff ARTHUR JAMES and STACEY
20  ABBOTT'S claims were rejected by the County of San Bernardino.

21            **FACTS COMMON TO ALL CLAIMS FOR RELIEF**

22      31.    Plaintiffs repeat and re-allege each and every allegation of
23  paragraphs 1 through 33, inclusive, as if fully set forth herein.

24      32.    Plaintiffs sustained damages, including but not limited to the loss
25  of the familial relationship with their biological and foster son, respectively,
26  the Decedent. Decedent sustained injuries, including but not limited to pain
27  and suffering, when Defendant Deputies used excessive and unreasonable
28  force, including deadly force, and employed negligent tactics against

Decedent, causing Decedent great bodily injury and death; and as a result of Defendant COUNTY officials employing unconstitutional policies, training, and subsequent ratification that substantially contributed to the Defendant Deputies use of excessive force.

33.    On or about March 30, 2024, COUNTY and SBSD were called to Decedent's home. Those SBSD deputies escorted Decedent to Desert Valley Hospital where he was placed on a 5585 hold. The SBSD deputies remained at Desert Valley Hospital with Aaron James for an extended period of time.

34.    On or about March 31, 2024, Decedent was placed on a 5150 hold for a serious mental health crisis and transported to Desert Valley Hospital.

35.    After approximately three days, on April 2, 2024, when Decedent was scheduled to be transported to a mental health facility, still experiencing a mental health crisis, the 17-year-old Decedent was not prevented from leaving the hospital.

36.    Upon information and belief, Hospital staff called the Sheriff's Department and informed them of Decedent's condition and situation.

37.    Upon information and belief, out of fear and distress, Decedent went to the home of his foster sisters, who resided with different foster parents.

38.    Upon information and belief, Defendant Deputies responded to the house on Forest Hills Drive, Victorville, California, at approximately 12:30 p.m. while Decedent was in the bathroom.

39.    Upon information and belief, Defendant Deputies knew that Decedent was alone in the bathroom, no third parties remained in the house, and Decedent was not a threat to any third party at the time. Further, Defendant Deputies did not have any information that any person was harmed or about to be harmed by Decedent.

40.    While in the bathroom, Decedent was not a threat to others while he was alone in the bathroom. After approximately 30 minutes of being in the

bathroom alone, knew or should have known that Decedent was suffering from a mental health crisis.

41.    At this time, and all relevant times thereafter, Decedent never verbally threatened any Defendant Deputies, Decedent was not an immediate threat to the safety of any person or Defendant Deputies, including not an immediate threat of death or serious bodily injury. Defendant Deputies pushed Decedent down and tackle him into the bathtub.

42.    Defendant Deputies forcibly breached the bathroom door and charged Decedent with their weapons drawn, escalating the situation. One deputy was also using a protective shield and lead the charge by the deputies. Decedent stood in the corner of the bathroom, next to the bathtub.

43.    Then Defendant Deputies used force including deadly force against Decedent causing him fear, harm, pain, suffering, and death when they shot and killed the 17-year-old Decedent. Decedent was shot in the side of his torso and/or back.

44.    Defendants had ample time and the opportunity to bring in a mobile crisis team and/or other specialist to address the known mental crisis of this minor Decedent. Defendants failed to take the necessary steps to ensure the safety of Decedent and to address the known mental health crisis before using deadly force.

45.    Further, Defendants either failed to call, failed to direct subordinates to call, or failed to wait for assistance from, the community-based mobile crisis response team for people experiencing a psychiatric emergency. Rather, Defendants unreasonably and unjustifiability used deadly force and killed 17-year-old Aaron James.

46.    Additional Defendant Deputies failed to intervene on the use of excessive and unreasonable force being used on Decedent and were integral

participants in the use of excessive and unreasonable force being used on Decedent.

47.    Upon information and belief, at the time that Defendant Deputies were shooting at Decedent, no person or Defendant Deputies was about to be harmed by Decedent. Decedent did not pose an immediate threat of death or serious bodily injury to any person or Deputy at the time of the shots.

48.    At the time that Defendant Deputies were shooting at Decedent, Decedent had not verbally threatened any of the Deputy DOES, and Decedent never attempted to assault any of the Deputy DOES or anyone else.

49.    The San Bernardino Sheriff's Department has demonstrated a widespread pattern and practice of excessive force and deadly force against minors who are in the midst of a mental health crisis. On March 9, 2024, just twenty-four days before the fatal shooting of Aaron James in his matter, the San Bernardino Sheriff's Department shot and killed 15-year-old, Ryan Gainer, who was autistic, after his family had called for assistance due to him being disruptive. Despite knowledge of him being autistic, Ryan Gainer was fatally shot by SBSD after deputies arrived.

50.    The killing of Aaron James and Ryan Gainer, both minors, by the SBSD deputies demonstrate the failures of Defendants to impose adequate discipline and training on his deputies who committed killings, or who committed other types of excessive force, creating a culture of impunity within the SBSD that encourages such violence and incidents of unreasonable force against the public including minors who are suffering a mental health crisis. Furthermore, both tragic killings demonstrate inadequately supervising, training, controlling, assigning, and disciplining COUNTY deputies and other personnel, including Defendants DOES, whom Defendants COUNTY and its officials knew or in the exercise of reasonable care should have known had

1  the aforementioned propensities and character traits, including the propensity
2  for violence and the use of excessive force.

3      51.    As a result of Defendants' actions and inactions, including Deputy
4  DOES use of excessive and unreasonable force, Decedent experienced serious
5  bodily injury, pain and suffering, and death.  As a result of Defendants' actions
6  and inactions, including Deputy DOES use of excessive and unreasonable
7  force, Plaintiffs suffered the loss of their foster son.

8      52.    Deputy DOES violated their own policies and basic officer
9  training when they used force, including deadly force against Decedent.

10     53.    The use of force was excessive and objectively unreasonable
11 under the circumstances, especially because the unarmed Decedent did not
12 pose an immediate threat of death or serious bodily injury to anyone at the
13 time the shooting, the Deputy DOES had reasonable alternatives, the Deputy
14 DOES did not give a warning that deadly force would be used, and the 17-
15 year-old Decedent did not verbally threaten any person or deputy.

16     54.    Plaintiffs seek wrongful death damages individually for the loss
17 of their foster son, and survival damages as successors-in-interest of Decedent,
18 for his pre-death pain and suffering, loss of enjoyment of life, and loss of life.
19 Plaintiffs also seek reasonable attorneys' fees and costs.

20                    **FIRST CLAIM FOR RELIEF**

21    **Unreasonable Search and Seizure – Excessive Force (42 U.S.C. § 1983)**

22   (By Plaintiffs against Defendants BRANDON VENTRE, BLAINE FLEMING,

23        MICHAEL MCMAHON, FERNANDO GONZALEZ, CHRISTOPHER

24             CHERMS, JUSTIN SNYDER and DOES 1-8)

25     55.    Plaintiffs repeat and re-allege each and every allegation of
26 paragraphs 1 through 54, inclusive, as if fully set forth herein.

27

28

56.     The Fourth Amendment of the United States Constitution, as applied to State Actors by the Fourteenth Amendment, provides the right of every person to be free from the use of excessive force by Deputies.

57.     Defendants Deputies and DOES 1-8's unjustified shooting and use of deadly force was both excessive and unreasonable under the circumstances. Defendants Deputies unjustified killing of Decedent deprived him of his right to be secure in his person against unreasonable searches and seizures as guaranteed to Decedent under the Fourth Amendment to the United States Constitution and applied to state actors by the Fourteenth Amendment.

58.     At all relevant times, Decedent never threatened any Deputy or other person, was not attempting, willing, or intending to inflict harm on anyone. Defendant Deputies were not responding to a serious or violent crime, Defendants had no information that any person was harmed or that Decedent had harmed any person, and Defendants did not see a crime in progress upon arrival. Nevertheless, Defendant Deputies used force including deadly force against Decedent, including by repeatedly shooting at Decedent and causing his death.

59.     When Defendant Deputies used force, including deadly force against Decedent, Decedent was not an immediate threat to the safety of others, was not an immediate threat of death or serious bodily injury, and there were several less-intrusive alternatives to the use of deadly force available to the Defendant Deputies at the time.

60.     Defendant Deputies were equipped with less-lethal force options that could have been employed instead of lethal force. Then the Defendant Deputies should have given the Decedent time to comply after less-lethal force was used instead of escalating the situation to using deadly force. Defendant Deputies are trained that they should consider the least intrusive force option, and to only use deadly force when necessary. The Defendant Deputies had the

time and ability to attempt voluntary compliance without resorting to physical force through de-escalation and tactical communication but failed to do so.

61.     Additionally, considering the number of Defendant Deputies on scene against the sole Decedent, size, age, and relative strength of the Defendant Deputies against the sole 17-year-old Decedent, and whether the Defendant Deputies had reason to believe that Decedent was mentally ill or emotionally disturbed, the use of force and deadly force against Decedent was objectively unreasonable.

62.     Upon information and belief, the Defendant Deputies had the opportunity to provide a verbal warning to Decedent but failed to do so prior to the use of deadly force against Decedent. This shooting violated Defendant Deputies training and standard sheriff's deputy training, including violating training with respect to the use of deadly force and with respect to the use of deadly force.

63.     Defendant Deputies caused various injuries as mentioned herein by integrally participating or failing to intervene in the incident, and by engaging in other acts and/or omissions around the time of the incident. Defendants Deputies' acts and omissions deprived Decedent of his right to be secure in his person against unreasonable searches and seizures as guaranteed to Decedent under the Fourth Amendment to the United States Constitution and applied to state actors by the Fourteenth Amendment.

64.     Defendant Deputies' unlawful use of deadly force caused Decedent to suffer extreme pain and suffering, loss of enjoyment of life, earning capacity, his relationship with his family and friends, and his untimely death when he was fatally shot by Defendant Deputies. Further, Defendants DOES 1-8 integrally participated in or failed to intervene in the shooting.

65.    As a direct result of the aforesaid acts and omissions of Defendant Deputies, Decedent suffered great physical and mental injury prior to his death, loss of life, and loss of enjoyment of life.

66.    As a legal result of their conduct, Defendant Deputies and DOES 1-8 are liable for Decedent's injuries, either because they were integral participants in the deprivation of life without due process, or they failed to intervene to prevent those violations.

67.    The conduct of Defendant Deputies and DOES 1-8 alleged above was willful, wanton, malicious, and done with reckless disregard for the rights and safety of Decedent and warrants the imposition of exemplary and punitive damages in an amount according to proof.

68.    Defendant Deputies were acting under color of state law and within the course and scope of their employment as law enforcement Deputies for the COUNTY.

69.    Plaintiffs seek survival damages, including but not limited to pre-death pain and suffering, loss of life, and loss of enjoyment of life, under this claim. Plaintiffs also seek reasonable attorneys' fees and costs under this claim.

## SECOND CLAIM FOR RELIEF

### Substantive Due Process (42 U.S.C. § 1983)

(By Plaintiffs against Defendants BRANDON VENTRE, BLAINE FLEMING, MICHAEL MCMAHON, FERNANDO GONZALEZ, CHRISTOPHER CHERMS, JUSTIN SNYDER and DOES 1-8)

70.    Plaintiffs repeat and re-allege each and every allegation in paragraphs 1 through 69 of this Complaint with the same force and effect as if fully set forth herein.

71.    The Substantive Due Process Clause of the Fourteenth Amendment to the United States Constitution guarantees all persons the right to be free from unlawful state interference with their familial relations.

72.    Defendant Deputies and DOES 1-8 intentionally shot the 17-year-old Decedent, causing his death, while he was suffering a mental health crisis, when he was not an immediate threat of death or serious bodily injury to any person at the time, and was alone in a bathroom. Upon information and belief, Defendants failed to give Decedent a verbal warning before they used deadly force against him and took his life. There were less-intrusive means available to the Defendant Deputies besides the use of deadly force, including de-escalation and tactical communication to attempt voluntary compliance, and upon information and believe, the Defendant Deputies failed to deploy these less-intrusive techniques and/or failed to allow Decedent the time to comply thereafter.

73.    The use of excessive and objectively unreasonable deadly force by Defendant Deputies and DOES 1-8 as alleged above, shocks the conscience, was in deliberate indifference and reckless disregard for Decedent's and Plaintiffs' rights, and displayed a purpose to harm Decedent unrelated to a legitimate law enforcement objective. In so doing, Defendant Deputies' conduct constitutes a violation of Plaintiffs' and Decedent's Fourteenth Amendment Substantive Due Process right to be free from unlawful state interference with their familial relationship with their son and beloved family member.

74.    As a legal result of their conduct, Defendant Deputies and DOES 1-8 are liable for Decedent's injuries, either because they were integral participants in the deprivation of life without due process, or they failed to intervene to prevent those violations.

75.    Defendant Deputies and DOES 1-8's conduct was malicious, oppressive and in reckless disregard for the rights and safety of Decedent and Plaintiffs and warrants the imposition of exemplary and punitive damages as to Defendant Deputies.

76.    As a direct result of the death of Decedent, Plaintiffs have suffered the loss of Decedent's love, care, comfort, society, companionship, assistance, protection, affection, moral support, financial support, and loss of services of Decedent. Plaintiffs seek wrongful death damages under this claim.

77.    Plaintiffs also seek attorneys' fees pursuant to 42 U.S.C. § 1988 and costs of suit.

### THIRD CLAIM FOR RELIEF

### Unconstitutional Custom, Practice, or Policy (42 U.S.C. § 1983)

(By Plaintiffs against Defendants COUNTY and DOES 8-10)

78.    Plaintiffs repeat and re-allege each and every allegation of paragraphs 1 through 77 inclusive, as if fully set forth herein.

79.    Defendant Deputies and DOES 1-8 acted under color of state law and within the course and scope of their employment when they intentionally shot and killed Decedent without there being an immediate threat of death or serious bodily injury, thereby using excessive and unreasonable force against Decedent, and Defendants Supervisor DOES acted under color of state law and within the course and scope of their employment by maintaining unconstitutional, customs, practices, and policies. At all relevant times, the Defendant Deputies were not responding to a violent crime, there was no crime in progress with Defendant Deputies arrived, Decedent did not verbally threaten any person or officer and did not harm any person or officer.

80.    Defendant Deputies and DOES 1-8 acted pursuant to an expressly adopted or fiscal policy or longstanding practice or custom of the Defendants COUNTY and Supervisor DOES.

81.    On information and belief, Defendant Deputies and DOES 1-8 were not disciplined, reprimanded, retrained, provided additional training, suspended, or otherwise penalized in connection with the deprivation of Plaintiffs' or Decedent's rights.

82.    Based upon the principles set forth in *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978), on and for some time prior to April 2, 2024 (and continuing to the present date), Defendants COUNTY and Supervisor DOES, acting with gross negligence and with reckless and deliberate indifference to the rights and liberties of the public in general, and of Plaintiffs and Decedent, and of persons in their class, situation and comparable position in particular, knowingly maintained, enforced and applied an official recognized custom, policy, and practice of Defendant COUNTY, COUNTY policymakers, and Supervisor DOES, together with other and supervisors, maintained, inter alia, the following unconstitutional customs, practices, and policies:

(a)    Using excessive and objectively unreasonable force, including deadly force on unarmed persons who do not pose a risk of immediate death or serious bodily injury to others.

(b)    Providing inadequate training regarding the use of force, including the use of less-lethal force, and deadly force.

(c)    Using deadly force against a person suffering from a mental health crisis.

(d)    Employing and retaining as Deputies, individuals such as Defendant Deputies who upon information and belief, Defendants COUNTY and Defendant Deputies, at all times material herein, knew or reasonably should have known had dangerous propensities for abusing their authority and for using excessive force, and for mistreating citizens by acting with callous and/or deliberate indifference to the

constitutional rights of citizens, and failing to follow written SBSD policies, including the use of excessive force.

(e)    Inadequately supervising, training, controlling, assigning, and disciplining COUNTY law enforcement Deputies, and other personnel, including Defendant Deputies who COUNTY knew or in the exercise of reasonable care should have known, had the aforementioned propensities or character traits.

(f)    Maintaining grossly inadequate procedures for reporting, supervising, investigating, reviewing, disciplining and controlling misconduct by law enforcement Deputies of the COUNTY.

(g)    Announcing that unjustified uses of force are "within policy," including shootings that were later determined in court to be unconstitutional.

(h)    Even where uses of force are determined in court to be unconstitutional, refusing to discipline, terminate, or retrain the Deputies involved.

(i)    Failing to adequately discipline COUNTY law enforcement Deputies for the above-mentioned categories of misconduct, including inadequate discipline and "slaps on the wrist," discipline that is so slight as to be out of proportion with the magnitude of the misconduct, and other inadequate discipline that is tantamount to encouraging misconduct.

(j)    Encouraging, accommodating, or facilitating a "blue code of silence," "blue shield," "blue wall," "blue curtain," "blue veil," or simply "code of silence," pursuant to which Deputies do not report other Deputies' errors, misconduct, or crimes.  Pursuant to this code of silence, if questioned about an incident of misconduct involving another

officer, while following the code, the officer being questioned will claim ignorance of the other officer's wrongdoing.

(k)    Maintaining a policy of inaction and an attitude of indifference towards soaring numbers of law enforcement shootings, including failing to discipline, retrain, investigate, terminate, and recommend deputies for criminal prosecution who participate in shootings of unarmed people.

(l)    Otherwise covering up police misconduct.

83.    On information and belief, the COUNTY has deficient policies with respect to the use of force, including deadly force. As a result of deficient polices, the Defendant Deputies shot Decedent while Decedent was alone in a bathroom, not threatening any person, and while not an immediate threat of death or serious bodily injury, resulting in the injuries claimed in this lawsuit.

84.    Defendant COUNTY and Supervisor DOES, together with various other officials, whether named or unnamed, had either actual or constructive knowledge of the deficient policies, practices and customs alleged herein. Despite having knowledge as stated above, these Defendant condoned, tolerated and through actions and inactions thereby ratified such policies. Said Defendant also acted with deliberate indifference to the foreseeable effects and consequences of these policies with respect to the constitutional rights of Plaintiffs and other individuals similarly situated.

85.    By perpetrating, sanctioning, tolerating, and ratifying the outrageous conduct and other wrongful acts, Defendants COUNTY and Supervisor DOES, acted with intentional, reckless, and callous disregard for the Plaintiffs' constitutional rights. Furthermore, the policies, practices, and customs implemented, maintained, and tolerated by Defendants COUNTY and Supervisor DOES, were affirmatively linked to and were a significantly influential force behind Decedent's and Plaintiffs' harm.

86.    By reason of the aforementioned acts and omissions, and as a direct and proximate result of the aforementioned unconstitutional policies and customs, Decedent endured substantial pain and suffering, loss of enjoyment of life, and loss of life, and Plaintiffs have suffered the loss of their foster son and will continue to be deprived for the remainder of their lives.

87.    The acts of each of Defendant Supervisor DOES were willful, wanton, oppressive, malicious, fraudulent, and extremely offensive and unconscionable to any person of normal sensibilities, and therefore warrants imposition of exemplary and punitive damages as to Defendant Supervisor DOES.

88.    On information and belief, the following are examples of cases where SBSD Deputies were not disciplined, reprimanded, retrained, suspended, or otherwise penalized in connection with the underlying acts giving rise to the below lawsuits, which indicate that the COUNTY routinely ratifies such behavior, fails to train its Deputies, and maintains a practice of allowing such behavior:

a.    In *Estate of Merlin Factor v. County of San Bernardino, et al.*, case number 5:14-cv-01289-DMG-AGR(x), plaintiffs argued that the use of deadly force against the unarmed Merlin Factor in 2013 was unreasonable. The police reports showed that Mr. Factor was unarmed, and the parties settled the case for a high six-figure settlement. Upon information and belief, no deputy was retained, provided additional training, disciplined, suspended, or terminated as a result of this incident.

b.    In *Archibald v. County of San Bernardino*, case number 5:16-cv-1128, plaintiff argued that the involved San Bernardino County sheriff's deputy used deadly force against the unarmed Nathanael Pickett in 2015 when he posed no immediate threat. In 2018, the jury in that case returned a $33.5 million verdict against Defendant County of San Bernardino and its

involved deputy, Kyle Woods. In the Archibald case, there was video footage that captured the shooting incident. However, SBSD accepted Woods' version over what was depicted in the video and rejected the objective evidence. Woods continued to work at SBSD after the Archibald shooting, and then he was involved in another shooting. On January 14, 2018, after the Archibald shooting incident, Woods shot Ryan Martinez after Mr. Martinez's vehicle flipped over and while Mr. Martinez was still inside the vehicle. The contentions against Woods were that he shot Mr. Martinez without giving him commands, without warning, and when there was no imminent or immediate threat of death or serious bodily injury to anyone. After the Martinez shooting, Woods remained employed by the SBSD. That the SBSD retained Woods after he shot Ryan Martinez raises an inference that the County retained and hired deputies who demonstrated a propensity for abusing their authority.

    c.    In *T.M. (Phillips) v. County of San Bernardino, et al.*, case number 5:18-cv-2532-R-PLA, plaintiff alleged that the shooting of Lajuana Phillips who was driving her vehicle despite not posing an immediate threat of death or serious bodily injury was excessive and unreasonable. In 2018, the parties settled the case for a seven-figure settlement. Upon information and belief, no deputy was retained, provided additional training, disciplined, suspended, or terminated as a result of this incident.

    d.    In *Ranero v. County of San Bernardino*, case number 5:16-cv-02655, the COUNTY settled with a man involved in non-fatal deputy shooting that resulting in serious injuries including the loss of the victim's left leg. The COUNTY ratified the deputies' conduct, found the shooting to be "within policy," and failed to reprimand, retrain, or otherwise penalize the deputies for their conduct.

e.     In *Young v. County of San Bernardino, et al.*, case number 5:15-cv- 01102-JGB-SP, plaintiff argued that the 2014 shooting of Keivon Young was excessive and unreasonable. In 2016 a jury agreed and awarded a high six-figure verdict in plaintiff's favor. Upon information and belief, no deputy was retained, provided additional training, disciplined, suspended, or terminated as a result of this incident.

f.     In *M.A., et al. v. County of San Bernardino, et al.*, case number 8:20-cv-00567-JFW-SHK, plaintiffs alleged that the 2019 fatal shooting of Darrell Allen, Jr. was excessive and unreasonable when deputies intentionally shot Mr. Allen several times without warning, and when Mr. Allen was not an immediate threat of death or serious bodily injury. In 2021, the parties settled the case for a seven-figure settlement. Upon information and belief, no deputy was retained, provided additional training, disciplined, suspended, or terminated as a result of this incident.

g.     In *Brown v. County of San Bernardino*, case number 5:20-cv-01658, Mr. Brown alleged that deputies used excessive and unreasonable force when they shot him several times and when he never threatened any person with a weapon or vehicle. In 2021, the parties settled the case for a high six-figure settlement. Upon information and belief, no deputy was retained, provided additional training, disciplined, suspended, or terminated as a result of this incident.

h.     In *Gomez v. County of San Bernardino*, case number 5:13-cv-2185, a lawsuit involving the non-fatal shooting of an unarmed 31-year-old man in his apartment complex after a vehicle pursuit.

i.     In *Estate of Allen Kephart v. County of San Bernardino*, CIL VDS 1110314, San Bernardino Superior Court, a lawsuit involving an incident wherein multiple deputies used excessive force against a 43-year-old man, which resulted in death.

j.      In *Elio Carrion v. County of San Bernardino*, case number 2:06-cv-8210, a lawsuit involving a non-fatal shooting of a passenger.

k.      In *Sofflet v. County of San Bernardino*, case number 5:18-cv-279, wherein a seven-figure settlement was reached regarding the in-custody death of a 34-year-old woman.

l.      On September 18, 2015, a SBSD deputy shot and killed Nicholas Johnson during a pursuit. At the time of the shooting, Johnson was not posing an imminent risk of harm to anyone as he was driving straight in the emergency lane. In 2016, Sheriff McMahon presented the involved deputies the Sheriff's Medal of Valor for the use of excessive force. Upon information and belief, there is a repeated pattern of failing to discipline deputies who engage in excessive force.

m.      In April 2015, SBSD deputies beat and tased Francis Jared Pusok after he fled police on a stolen horse. When Pusok fell off the horse, deputies pinned him to the ground, tased and beat him. Seven of the ten deputies involved were placed on administrative leave and resumed their duties in January 2016.

n.      The SBSD has demonstrated a pattern and practice of excessive force and deadly force against minors and persons who are in the midst of a mental health crisis. On March 9, 2024, just twenty-four days before the fatal shooting of Aaron James in his matter, the SBSD shot and killed 15-year-old, Ryan Gainer, who was autistic, after his family had called for assistance due to him being disruptive. Despite knowledge of him being autistic, Ryan Gainer was fatally shot by SBSD after deputies arrived.

o.      On February 5, 2023, SBSD Deputies shot and killed Tony Garza while he was suffering from a mental health crisis that was known to SBSD and COUNTY. In 2022, Mr. Garza was determined not mentally incompetent to stand trial and promised mental health treatment.

Notwithstanding this determination, on information and belief, SBSD and COUNTY failed to place Mr. Garza on the waitlist for mental health treatment. Shortly after SBSD and COUNTY released Mr. Garza without providing treatment, Mr. Garza, who did not pose a threat to responding officers or others, was chased down and fatally shot by SBSD deputies.

p.     Numerous prior incidents at County San Bernardino detention centers also support Plaintiffs' claims for Municipal Liability in this case. For example, between 2014 and 2016, thirty-three County inmates filed lawsuits alleging torture by the County and its deputies' involving violations of 42 USC 1983. (Case Nos. 5:15-cv-02515-JGB-DTB). Johnny Alcala and 14 other inmates sued the County, and David Smith filed his own lawsuit (5:15-cv-02513-JGB-DTB), going back to years of torture by COUNTY correctional officers.  Moreover, the ACLU also brought a class action lawsuit alleging unconstitutional practice of LGBT inmates at the County's WVDC. (Case No. 14-2171-JGB-SP). The ACLU's lawsuit addressed the trouble of WVDC in denying services in unconstitutional manner, including failure to make safety checks as mandated by Title 15, and the suit represented approximately 600 individuals.

q.     On or around April 5, 2024, at a press conference about the fatal shooting of Aaron James, Sheriff Shannon D. Dicus, while acting under the color of state law, stated:  *Obviously, we've had a number of these situations occur here, and it would certainly be my plea to the media that's present here, the media that's going to cover this story, [that] somehow—when we had the Ryan Gainer case, this turned into a racial issue. The overriding issue here that we need to be paying attention to as a society ... is that we have a mental health crisis on our hands[.]*

r.     Thus, Defendants COUNTY and Supervisor DOES had actual and/or constructive knowledge that SBSD's practice of acting with

deliberate indifference to the constitutional rights of citizens and/or engaging force to respond to persons experiencing mental health issues was uniquely widespread.

89.    Within a month prior to this incident, SBSD deputies shot and killed another teenage boy who was experiencing mental health crises. On March 9, 15-year-old Ryan Gainer, who was autistic, was fatally shot in Apple Valley after Deputies Wyatt Eisenbrey and Brandon Clancy officers responded to the family home.

90.    On multiple occasions, COUNTY and Supervisor DOES, have condoned, allowed and/or encouraged the use of excessive force and the violation of the constitutional rights by its deputies, including the use of excessive force.

91.    Because of the aforementioned practices, and customs of Defendants COUNTY and Supervisor DOES, Decedent was severely injured and subjected to pain and suffering and lost his life.

92.    Defendant COUNTY and Supervisor DOES are liable pursuant to *Monell* because they maintained condoned and/or permitted a custom and/or practice of conscious disregard of and/or deliberate indifference to Constitutional rights which was a moving force in the violation of Decedent's rights and/or because they ratified the actions of its employees by finding that their actions leading to the death of Decedent were in conformity with the SBSD's policy and by failing to discipline the involved deputies and employees.

93.    On information and belief, Defendants Deputies were not disciplined, reprimanded, retrained, suspended or otherwise penalized in connection with Decedent's death.

94.    On information and belief, Defendants COUNTY and Supervisor DOES failed to properly and adequately train Defendant Deputies, including

but not limited to, with regard to the use of physical force, less than lethal force, and legal force. The training policies of Defendant COUNTY were not adequate to train its officers to handle the usual and recurring situations with which they must deal, including the use of less than lethal and lethal force when responding to individuals exhibiting symptoms of a mental health crisis.

95.    Defendants COUNTY and Supervisor DOES, together with various other officials, whether named or unnamed, had either actual or constructive knowledge of the deficient practices and customs alleged in the paragraphs above. Despite having knowledge as stated above, these Defendants condoned, tolerated and through actions and inactions thereby ratified such policies. Said Defendants also acted with deliberate indifference to the foreseeable effects and consequences of these policies with respect to the constitutional rights of Decedent, Plaintiffs, and other similarly situated individuals.

96.    Upon information and belief, Defendant Supervisor DOES, are final policymakers for COUNTY. Upon information and belief, Supervisor DOES are final policymakers with respect to the authorization of funding and related resources to implement SBSD policies.

97.    Upon information and belief, Specialized Investigations Detective Ian Gosswiller of the SBSD investigated the shooting and concluded that the involved officers acted according to policy. Upon information and belief, Supervisor DOES approved and/or will approve of this conclusion.

98.    By perpetrating, sanctioning, tolerating and ratifying the outrageous conduct and other wrongful acts, Defendants COUNTY and Defendant Deputies, and Supervisor DOES acted with intentional, reckless, and callous disregard for the life of Decedent and Plaintiffs' constitutional rights. Furthermore, the policies, practices, and customs implemented, maintained, and still tolerated by Defendant COUNTY were affirmatively

linked to and were a significantly influential force behind the injuries of Decedent and Plaintiffs.

99.     The actions of each of the Defendant Supervisor DOES were willful, wanton, oppressive, malicious, fraudulent, and extremely offensive and unconscionable to any person of normal sensibilities and therefore warrants the imposition of exemplary and punitive damages as to Defendant Supervisor DOES.

100.   By reason of the aforementioned acts and omissions of Defendants COUNTY and Supervisor DOES, Plaintiffs have suffered loss of love, companionship, affection, comfort, care, society, and will continue to be so deprived for the remainder of their lives. Further, Plaintiffs seek survival damages, including but not limited to pre-death pain and suffering, loss of life, and loss of enjoyment of life, under this claim.

101.   Accordingly, Defendants COUNTY and Supervisor DOES, each are liable for compensatory damages under 42 U.S.C. § 1983.

102.   Plaintiffs bring this claim as successor-in-interest to Decedent and seek survival damages. Plaintiffs also seek reasonable attorneys' fees and costs under this claim.

## FOURTH CLAIM FOR RELIEF

### Municipal Liability for Failure to Train (42 U.S.C. § 1983)

(By Plaintiffs against Defendants COUNTY and DOES 8-10)

103.   Plaintiffs repeat and re-allege each and every allegation in paragraphs 1 through 102 of this Complaint with the same force and effect as if fully set forth herein.

104.   At all relevant times, Defendant Deputies and Supervisors, inclusive, acted under color of law and within the course and scope of their employment with the COUNTY.

105.   The acts of Defendant Deputies as described herein, deprived Decedent and Plaintiffs of their particular rights under the United States Constitution, including when they intentionally shot Decedent without justification, causing his death.

106.   On information and belief, Defendant COUNTY failed to properly and adequately train Defendant Deputies including with regard to the use of deadly force, especially with regard to a subject suffering a mental health crisis. The training policies of Defendants COUNTY and Supervisor DOES were not adequate to train its deputies to handle the usual and recurring situations with which they must deal.

107.   On information and belief, the COUNTY failed to train their deputies not to shoot at children suffering a mental health crisis while they are not an immediate threat of death or serious bodily injury. As a result of this deficient policy and deficient training, the deputy Defendants shot Decedent, resulting in the injuries claimed in this lawsuit.

108.   The training policies of Defendant COUNTY were not adequate to train its Deputies to handle the usual and recurring situations with which they must deal, including de-escalation techniques, tactical communication, tactical positioning, and both the use of less than lethal and lethal force.

109.   Defendants COUNTY and Supervisor DOES were deliberately indifferent to the obvious consequences of its failure to train its Deputies adequately, including with respect to the use of force.

110.   The failure of Defendants COUNTY and Supervisor DOES to provide adequate training caused the deprivation of Plaintiffs' and Decedent's rights by Defendant Deputies; that is, Defendants' failure to train is so closely related to the deprivation of Plaintiffs' and Decedent's rights as to be the moving force that caused the ultimate injury.

111.    The following are only a few examples of cases where the COUNTY failed to train its Deputies, and the involved Deputies were not disciplined, reprimanded, retrained, suspended, or otherwise penalized in connection with the underlying acts giving rise to the below lawsuits, which indicates that Defendant COUNTY failed to adequately train its Deputies, more specifically the failure to train with regard to the use of force:

a.    In *Estate of Merlin Factor v. County of San Bernardino, et al.*, case number 5:14-cv-01289-DMG-AGR(x), plaintiffs argued that the use of deadly force against the unarmed Merlin Factor in 2013 was unreasonable. The police reports showed that Mr. Factor was unarmed, and the parties settled the case for a high six-figure settlement. Upon information and belief, no deputy was retained, provided additional training, disciplined, suspended, or terminated as a result of this incident.

b.    In *Archibald v. County of San Bernardino*, case number 5:16-cv-1128, plaintiff argued that the involved San Bernardino County sheriff's deputy used deadly force against the unarmed Nathanael Pickett in 2015 when he posed no immediate threat. In 2018, the jury in that case returned a $33.5 million verdict against Defendant County of San Bernardino and its involved deputy, Kyle Woods. In the Archibald case, there was video footage that captured the shooting incident. However, SBSD accepted Woods' version over what was depicted in the video and rejected the objective evidence. Woods continued to work at SBSD after the Archibald shooting, and then he was involved in another shooting. On January 14, 2018, after the Archibald shooting incident, Woods shot Ryan Martinez after Mr. Martinez's vehicle flipped over and while Mr. Martinez was still inside the vehicle. The contentions against Woods were that he shot Mr. Martinez without giving him commands, without warning, and when there was no imminent or immediate threat of death or serious bodily injury to

PLAINTIFFS' THIRD AMENDED COMPLAINT FOR DAMAGES

anyone. After the Martinez shooting, Woods remained employed by the SBSD. That the SBSD retained Woods after he shot Ryan Martinez raises an inference that the County retained and hired deputies who demonstrated a propensity for abusing their authority.

     c.    In *T.M. (Phillips) v. County of San Bernardino, et al.*, case number 5:18-cv-2532-R-PLA, plaintiff alleged that the shooting of Lajuana Phillips who was driving her vehicle despite not posing an immediate threat of death or serious bodily injury was excessive and unreasonable. In 2018, the parties settled the case for a seven-figure settlement. Upon information and belief, no deputy was retained, provided additional training, disciplined, suspended, or terminated as a result of this incident.

     d.    In *Ranero v. County of San Bernardino*, case number 5:16-cv-02655, the COUNTY settled with a man involved in non-fatal deputy shooting that resulting in serious injuries including the loss of the victim's left leg. The COUNTY ratified the deputies' conduct, found the shooting to be "within policy," and failed to reprimand, retrain, or otherwise penalize the deputies for their conduct.

     e.    In *Young v. County of San Bernardino, et al.*, case number 5:15-CV- 01102-JGB-SP, plaintiff argued that the 2014 shooting of Keivon Young was excessive and unreasonable.  In 2016 a jury agreed and awarded a high six-figure verdict in plaintiff's favor. Upon information and belief, no deputy was retained, provided additional training, disciplined, suspended, or terminated as a result of this incident.

     f.    In *M.A., et al. v. County of San Bernardino, et al.*, case number 8:20-c-00567-JFW-SHK, plaintiffs alleged that the 2019 fatal shooting of Darrell Allen, Jr. was excessive and unreasonable when deputies intentionally shot Mr. Allen several times without warning, and when Mr. Allen was not an immediate threat of death or serious bodily injury. In

2021, the parties settled the case for a seven-figure settlement. Upon information and belief, no deputy was retained, provided additional training, disciplined, suspended, or terminated as a result of this incident.

g.    In *Brown v. County of San Bernardino*, case number 5:20-cv-01658, Mr. Brown alleged that deputies used excessive and unreasonable force when they shot him several times and when he never threatened any person with a weapon or vehicle. In 2021, the parties settled the case for a high six-figure settlement. Upon information and belief, no deputy was retained, provided additional training, disciplined, suspended, or terminated as a result of this incident.

h.    In *Gomez v. County of San Bernardino*, case number 5:13-cv-2185, a lawsuit involving the non-fatal shooting of an unarmed 31-year-old man in his apartment complex after a vehicle pursuit.

i.    In *Estate of Allen Kephart v. County of San Bernardino*, CIL VDS 1110314, San Bernardino Superior Court, a lawsuit involving an incident wherein multiple deputies used excessive force against a 43-year-old man, which resulted in death.

j.    In *Elio Carrion v. County of San Bernardino*, case number 2:06-cv-8210, a lawsuit involving a non-fatal shooting of a passenger.

k.    In *Sofflet v. County of San Bernardino*, case number 5:18-cv-279, wherein a seven-figure settlement was reached regarding the in-custody death of a 34-year-old woman.

l.    Numerous prior incidents at County San Bernardino detention centers also support Plaintiffs' claims for Municipal Liability in this case. For example, between 2014 and 2016, thirty-three County inmates filed lawsuits alleging torture by the County and its deputies' involving violations of 42 USC 1983. (Case Nos. 5:15-cv-02515-JGB-DTB). Johnny Alcala and 14 other inmates sued the County, and David Smith filed his

own lawsuit (5:15-cv-02513-JGB-DTB), going back to years of torture by COUNTY correctional officers. Moreover, the ACLU also brought a class action lawsuit alleging unconstitutional practice of LGBT inmates at the County's WVDC. (Case No. 14-2171-JGB-SP). The ACLU's lawsuit addressed the trouble of WVDC in denying services in unconstitutional manner, including failure to make safety checks as mandated by Title 15, and the suit represented approximately 600 individuals.

112.  As a direct and proximate result of the aforementioned conduct, Decedent endured severe pain and suffering loss of enjoyment of life, and loss of life. Further, as a direct and proximate result of the aforementioned conduct, Plaintiffs endured the loss of their foster child, including being deprived of the life-long love, companionship, comfort, support, society, care, and sustenance of Decedent, and will continue to be so deprived for the remainder of their natural life.

113.  Accordingly, Defendants COUNTY and Supervisor DOES are liable to Plaintiffs for compensatory damages under 42 U.S.C. § 1983.

114.  Plaintiffs bring this claim as successor-in-interest to Decedent and seek survival damages. Plaintiffs also seek reasonable attorneys' fees and costs under this claim.

## FIFTH CLAIM FOR RELIEF

### Municipal Liability – Ratification (42 U.S.C. § 1983)

(By Plaintiffs against Defendants COUNTY and DOES 8-10)

115.  Plaintiffs repeat and re-allege each and every allegation in paragraphs 1 through 114 of this Complaint with the same force and effect as if fully set forth herein.

116.  At all relevant times, Defendant DOES 1-10, inclusive, acted under color of law and within the course and scope of their employment with the COUNTY.

117. The acts of Defendant Deputies as described herein, deprived Decedent and Plaintiffs of their particular rights under the United States Constitution, including when they intentionally shot Decedent without justification, causing his death.

118. Upon information and belief, a final policymaker, including Defendant Supervisor DOES, acting under color of law, has a history of ratifying the unconstitutional and unreasonable uses of force, including deadly force.

119. Upon information and belief, a final policymaker for the COUNTY, acting under color of law, who had final policymaking authority concerning the acts of Defendant Deputies and the bases for them, ratified the acts and omissions of Defendant Deputies and the bases for them. Upon information and belief, the final policymaker knew of and specifically approved of Defendants' acts, specifically approving the SBSD Deputies' shooting of the 17-year-old boy suffering a mental health crisis when he was not an immediate threat of death or serious bodily injury.

120. On information and belief, the official policies with respect to the incident are that Deputies are not to use deadly force against an individual unless the individual poses an immediate risk of death or serious bodily injury to the Deputies or others. The Deputies' actions deviated from these official policies because Decedent did not pose an immediate threat of death or serious bodily injury to the involved Deputies or anyone else.

121. Upon information and belief, a final policymaker(s) has determined (or will determine) that the acts of Defendant Deputies were "within policy."

122. The following are only a few examples of cases where SBSD Deputies were not disciplined, reprimanded, retrained, suspended, or otherwise penalized in connection with the underlying acts giving rise to the

below lawsuits, which indicate that Defendant COUNTY routinely ratifies such behavior:

      a.     In *Estate of Merlin Factor v. County of San Bernardino, et al.*, case number 5:14-cv-01289-DMG-AGR(x), plaintiffs argued that the use of deadly force against the unarmed Merlin Factor in 2013 was unreasonable. The police reports showed that Mr. Factor was unarmed, and the parties settled the case for a high six-figure settlement. Upon information and belief, no deputy was retained, provided additional training, disciplined, suspended, or terminated as a result of this incident.

      b.     In *Archibald v. County of San Bernardino*, case number 5-16-cv-1128, plaintiff argued that the involved San Bernardino County sheriff's deputy used deadly force against the unarmed Nathanael Pickett in 2015 when he posed no immediate threat.  In 2018, the jury in that case returned a $33.5 million verdict against Defendant County of San Bernardino and its involved deputy, Kyle Woods. In the Archibald case, there was video footage that captured the shooting incident. However, SBSD accepted Woods' version over what was depicted in the video and rejected the objective evidence. Woods continued to work at SBSD after the Archibald shooting, and then he was involved in another shooting. On January 14, 2018, after the Archibald shooting incident, Woods shot Ryan Martinez after Mr. Martinez's vehicle flipped over and while Mr. Martinez was still inside the vehicle. The contentions against Woods were that he shot Mr. Martinez without giving him commands, without warning, and when there was no imminent or immediate threat of death or serious bodily injury to anyone. After the Martinez shooting, Woods remained employed by the SBSD. That the SBSD retained Woods after he shot Ryan Martinez raises an inference that the County retained and hired deputies who demonstrated a propensity for abusing their authority.

c.    In *T.M. (Phillips) v. County of San Bernardino, et al.*, case number 5:18-cv-2532-R-PLA, plaintiff alleged that the shooting of Lajuana Phillips who was driving her vehicle despite not posing an immediate threat of death or serious bodily injury was excessive and unreasonable. In 2018, the parties settled the case for a seven-figure settlement. Upon information and belief, no deputy was retained, provided additional training, disciplined, suspended, or terminated as a result of this incident.

d.    In *Ranero v. County of San Bernardino*, case number 5:16-cv-02655, the COUNTY settled with a man involved in non-fatal deputy shooting that resulting in serious injuries including the loss of the victim's left leg. The COUNTY ratified the deputies' conduct, found the shooting to be "within policy," and failed to reprimand, retrain, or otherwise penalize the deputies for their conduct.

e.    In *Young v. County of San Bernardino, et al.*, case number 5:15-cv- 01102-JGB-SP, plaintiff argued that the 2014 shooting of Keivon Young was excessive and unreasonable.  In 2016 a jury agreed and awarded a high six-figure verdict in plaintiff's favor.  Upon information and belief, no deputy was retained, provided additional training, disciplined, suspended, or terminated as a result of this incident.

f.    In *M.A., et al. v. County of San Bernardino, et al.*, case number 8:20-cv-00567-JFW-SHK, plaintiffs alleged that the 2019 fatal shooting of Darrell Allen, Jr. was excessive and unreasonable when deputies intentionally shot Mr. Allen several times without warning, and when Mr. Allen was not an immediate threat of death or serious bodily injury. In 2021, the parties settled the case for a seven-figure settlement. Upon information and belief, no deputy was retained, provided additional training, disciplined, suspended, or terminated as a result of this incident.

g.    In *Brown v. County of San Bernardino*, case number 5:20-cv-01658, Mr. Brown alleged that deputies used excessive and unreasonable force when they shot him several times and when he never threatened any person with a weapon or vehicle. In 2021, the parties settled the case for a high six-figure settlement. Upon information and belief, no deputy was retained, provided additional training, disciplined, suspended, or terminated as a result of this incident.

h.    In *Gomez v. County of San Bernardino*, case number 5:13-cv-2185, a lawsuit involving the non-fatal shooting of an unarmed 31-year-old man in his apartment complex after a vehicle pursuit.

i.    In *Estate of Allen Kephart v. County of San Bernardino*, CIL VDS 1110314, San Bernardino Superior Court, a lawsuit involving an incident wherein multiple deputies used excessive force against a 43-year-old man, which resulted in death.

j.    In *Elio Carrion v. County of San Bernardino*, case number 2:06-cv-8210, a lawsuit involving a non-fatal shooting of a passenger.

k.    In *Sofflet v. County of San Bernardino*, case number 5:18-cv-279, wherein a seven-figure settlement was reached regarding the in-custody death of a 34-year-old woman.

l.    Numerous prior incidents at County San Bernardino detention centers also support Plaintiffs' claims for Municipal Liability in this case. For example, between 2014 and 2016, thirty-three County inmates filed lawsuits alleging torture by the County and its deputies' involving violations of 42 USC 1983. (Case Nos. 5:15-cv-02515-JGB-DTB). Johnny Alcala and 14 other inmates sued the County, and David Smith filed his own lawsuit (5:15-cv-02513-JGB-DTB), going back to years of torture by COUNTY correctional officers. Moreover, the ACLU also brought a class action lawsuit alleging unconstitutional practice of LGBT inmates at the

County's WVDC. (Case No. 14-2171-JGB-SP). The ACLU's lawsuit addressed the trouble of WVDC in denying services in unconstitutional manner, including failure to make safety checks as mandated by Title 15, and the suit represented approximately 600 individuals.

123.  By reason of the aforementioned acts and omissions, Defendants COUNTY and Supervisor DOES are liable to Plaintiffs for compensatory damages under 42 U.S.C. § 1983.

124.  Plaintiffs bring this claim as successor-in-interest to Decedent and seek survival damages. Plaintiffs also seek reasonable attorneys' fees and costs under this claim.

### SIXTH CLAIM FOR RELIEF

**Battery (Cal. Govt. Code §§ 815, 820 and California Common Law)**

(Plaintiffs against Defendants BRANDON VENTRE, BLAINE FLEMING, MICHAEL MCMAHON, FERNANDO GONZALEZ, CHRISTOPHER CHERMS, JUSTIN SNYDER and DOES 1-8)

125.  Plaintiffs repeat and reallege each and every allegation in paragraphs 1 through 124 of this Complaint with the same force and effect as if fully set forth herein.

126.  At all relevant times, Defendant Deputies were working as officials for the SBSD and were acting within the course and scope of their duties as Deputies for the COUNTY.

127.  When Defendant Deputies were detaining Decedent, Decedent was not threatening any person, and Decedent never verbally threatened any Defendant Deputies.

128.  Decedent was not attempting, willing, or intending to inflict harm on anyone. Defendants were not responding to a serious or violent crime, Defendants did not witness a crime in progress upon arrival, Defendants had no information that anyone had been hurt or injured or that Decedent had hurt

or injured someone. Decedent was alone in a bathroom when Defendant Deputies used force against Decedent, including when they repeatedly shot Decedent without justification.

129. The shooting was excessive and objectively unreasonable, especially because throughout the incident, Decedent presented no immediate threat to the safety of the Deputies or others, including not an immediate threat of death or serious bodily injury to any Deputy or other person. Further, Defendants' shooting and use of force violated their training, standard law enforcement training, and generally accepted law enforcement standards.

130. Defendant Deputies had no legal justification for using force against Decedent, and the use of force was unreasonable and non-privileged. Moreover, Decedent did not knowingly or voluntarily consent to the use of force against him.

131. Defendant Deputies caused various injuries as mentioned herein and are liable either because they directly harmed Decedent or by integrally participating or failing to intervene in the incident, and by engaging in other acts and/or omissions around the time of the incident. Defendants' acts and omissions resulted in harmful and offensive touching of Plaintiffs.

132. As a direct and proximate result of the aforesaid acts and omissions of Defendant Deputies, Decedent suffered great physical and mental injury, as well as fear and emotional distress related to his physical injuries, pain and suffering, humiliation, anguish, and death.

133. Defendants Deputies killed Decedent despite the absence of an imminent threat of death or physical injury to themselves or others. Decedent posed no threat to the officers' safety or to the safety of others.

134. Plaintiffs assert wrongful death actions against all Defendants pursuant to C.C.P. §§ 377.60 *et seq.* Per California Probate Code Section 6402 (b), Plaintiffs are, "… the decedent's parent or parents…" This claim is based

upon the fact that Defendants' negligent, reckless and wrongful acts and omissions, as alleged herein, were a direct and legal cause of Decedent's death and the resulting damages to Plaintiffs. As a result of their conduct, Defendant Deputies are liable for Plaintiffs injuries, either because they were integral participants in the wrongful conduct, or because they failed to intervene to prevent these violations.

135.  As a direct and legal result of Defendant Deputies acts and omissions, Plaintiffs suffered damages, including, without limitation, loss of earnings and earning capacity, support and benefits, loss of enjoyment of life, pain and suffering, physical injuries and sickness, emotional distress, medical expenses, funeral and burial expenses, attorneys' fees, costs of suit, other pecuniary losses not yet ascertained and the loss of Decedent's love, affection, society and companionship.

136.  Plaintiffs seek survival damages, including but not limited to pre-death pain and suffering, loss of life, and loss of enjoyment of life, under this claim.

137.  The conduct of Defendant Deputies was malicious, wanton, oppressive, and accomplished with a conscious disregard for the rights of Decedent, entitling Plaintiffs to an award of exemplary and punitive damages, which Plaintiffs seeks under this claim.

138.  Defendant Deputies are directly liable for their actions and inactions pursuant to Cal. Govt. Code § 820(a).

139.  Plaintiffs seek compensatory damages and bring this wrongful death claim as successor-in-interest to Decedent against Defendant and seeks survival and wrongful death damages under this claim. Plaintiffs also seek reasonable costs and funeral and burial expenses on this claim.

**SEVENTH CLAIM FOR RELIEF**

**Negligence (Cal. Govt. Code §§ 815, 820 and California Common Law)**

(Plaintiffs against Defendants BRANDON VENTRE, BLAINE FLEMING, MICHAEL MCMAHON, FERNANDO GONZALEZ, CHRISTOPHER CHERMS, JUSTIN SNYDER and DOES 1-8)

140. Plaintiffs repeat and reallege each and every allegation in paragraphs 1 through 139 of this Complaint with the same force and effect as if fully set forth herein.

141. Law enforcement officers have a duty and responsibility to act reasonably, care for, protect, and use only reasonable and necessary force against a person. Upon information and belief, as alleged herein, Defendant Deputies breached their duty of care.

142. Additionally, Sheriff's Deputies, including Defendant Deputies, have a duty to use reasonable care to prevent harm or injury to other. This duty includes but is not limited to the following: using appropriate tactics, giving appropriate commands, giving warnings, allowing time for the subject to understand and comply with appropriate commands and warnings, not using any force unless necessary, using less-intrusive options, acting objectively reasonable when using deadly force, and only using deadly force as a last resort. Defendant Deputies, as alleged herein, breached their duty of care.

143. The actions and inactions of Defendant Deputies were negligent and reckless, including but not limited to:

    a)    Defendants' failure to constitutionally respond to Decedent.

    b)    Defendants' failure to properly and adequately care for, protect, and transport Decedent.

    c)    Defendants' failure to properly and adequately assess the need to use force against Decedent.

d)      Defendants' negligent tactics and handling of the situation with Decedent, including the failure to de-escalate the situation.

e)      Defendants' negligent use of force against Decedent.

f)      Defendants' failure to provide prompt medical care to Decedent.

g)      Negligent tactics and handling of the situation with Decedent, including pre-shooting negligence and the failure to give appropriate commands and warnings.

h)      Defendants' failure to properly train and supervise employees.

i)      Defendants' failure to ensure that adequate numbers of employees with appropriate education and training were available to meet the needs of and protect the rights of Decedent.

j)      Defendants' negligent handling of evidence and witnesses.

k)      Defendants' failure to properly report the incident.

l)      Defendants' failure to de-escalate the situation and use proper communication and commands.

144.   As a result of their misconduct, Defendant Deputies are liable for Plaintiffs' and Decedent's injuries on this claim, either because they were integral participants in the aforementioned conduct, or because they failed to intervene to prevent these violations.

145.   As a direct and proximate result of Defendants' conduct as alleged above, and other undiscovered negligent conduct, Decedent suffered the loss of his life, and Plaintiffs have been deprived of the life-long love, companionship, comfort, care, support, society, and sustenance of Decedent, and will continue to be so deprived for the remainder of their natural life.

146.   In addition, at the aforementioned date, time and place, the Defendants negligently, carelessly and without reasonable care, touched and fatally battered Decedent.

147.  Defendant Deputies are directly liable for their actions and inactions pursuant to Cal. Govt. Code § 820(a).

148.  The civil rights violations alleged herein, as well as Defendants' other tortious acts and omissions, and negligence under California Civil Code § 1714 form the basis for this cause of action.

149.  As a result of their conduct, Defendants are liable for Decedent's injuries because they were integral participants in the negligence, or because they failed to intervene to prevent these violations, or under the doctrine of *respondeat superior*.

150.  The Defendant COUNTY is vicariously liable for the wrongful acts of Defendant Deputies and DOES 1-8, inclusive, pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employee's act would subject him or her to liability.

151.  Plaintiffs seek compensatory damages and bring this wrongful death claim as successor-in-interest to Decedent against Defendants and seeks survival and wrongful death damages under this claim. Plaintiffs also seek reasonable costs and funeral and burial expenses on this claim.

## EIGHTH CLAIM FOR RELIEF

### Violation of the Bane Act (Cal. Civil Code § 52.1)

(Plaintiffs against Defendants BRANDON VENTRE, BLAINE FLEMING, MICHAEL MCMAHON, FERNANDO GONZALEZ, CHRISTOPHER CHERMS, JUSTIN SNYDER and DOES 8-10)

152.  Plaintiffs repeat and reallege each and every allegation in paragraphs 1 through 151 of this Complaint with the same force and effect as if fully set forth herein.

153.  California Civil Code, Section 52.1 (the Bane Act), prohibits any person, including a law enforcement officer, from interfering with another

person's exercise or enjoyment of his constitutional rights by threats, intimidation, or coercion, including by the use of unconstitutionally excessive force. Conduct that violates the Fourth Amendment, including the use of excessive force, violates the Bane Act when performed with specific intent to deprive others of their civil rights, which can be inferred by a reckless disregard for the person's civil rights.

154.  Defendant Deputies while working for the COUNTY and acting within the course and scope of their duties as Deputies and under color of law, intentionally committed, and attempted to commit acts of violence against Decedent, including by intentionally and repeatedly shooting Decedent and otherwise using unreasonable force against Decedent. This shooting was excessive and objectively unreasonable and especially reckless because Decedent did not pose an immediate threat of death or serious bodily injury to any person. Further, the Defendants' shooting and use of force violated basic law enforcement training, and generally accepted law enforcement standards. Defendants' shot and killed Decedent without any legal justification.

155.  When Defendant Deputies repeatedly shot Decedent while Decedent was not an immediate threat of death or serious bodily injury, they interfered with Decedent's constitutional rights to be free from unreasonable searches and seizures, to equal protection of the laws, to be free from state actions that shock the conscience, and to life, liberty, and property.

156.  On information and belief, Defendant Deputies intentionally and spitefully committed the above acts to discourage or prevent Decedent from exercising his civil rights, or from enjoying such rights, which he was and is fully entitled to enjoy. Defendant Deputies intentionally interfered with the above constitutional rights of Decedent, and as alleged herein, which can be demonstrated by Defendants' reckless disregard for Decedent's constitutional rights.

157. On information and belief, Decedent reasonably believed and understood that the violent acts committed by Defendant Deputies were intended to discourage him from exercising the above civil rights, to retaliate against him for invoking such rights, or to prevent him from exercising such rights.

158. The conduct of Defendant Deputies was a substantial factor in causing Decedent's harm, loss, injury, and damages.

159. The Defendant COUNTY is vicariously liable for the wrongful acts of Defendant Deputies pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employee's act would subject him or her to liability.

160. Defendant and DOES 9-10 are vicariously liable under California law and the doctrine of *respondeat superior*.

161. The conduct of Defendant Deputies was malicious, wanton, oppressive, and accomplished with a conscious disregard for Decedent's rights, justifying an award of exemplary and punitive damages as to Defendant Deputies.

162. Plaintiffs seek compensatory damages for the violations of their and Decedent's rights. Plaintiffs also seek punitive damages, costs, and attorney fees under California Civil Code section 52 *et seq*. as to this claim.

/ / /

1

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs ARTHUR JAMES and STACEY ABBOTT request entry of judgment in their favor against COUNTY OF SAN BERNARDINO, BRANDON VENTRE; BLAINE FLEMING; MICHAEL MCMAHON; FERNANDO GONZALEZ; CHRISTOPHER CHERMS; JUSTIN SNYDER; and DOES 1-10, inclusive, as follows:

1.     For compensatory damages, including general and special damages, according to proof at trial, under federal and State law.

2.     For punitive and exemplary damages against the individual defendants in an amount to be proven at trial (and not against Defendant COUNTY).

3.     For statutory damages.

4.     For reasonable attorneys' fees pursuant to statute including litigation expenses.

5.     For costs of suit and interest incurred herein.

6.     For such other and further relief as the Court may deem just and proper.


DATED: February 6, 2026        **WEST COAST TRIAL LAWYERS, APLC**
                               **NAVAB LAW, APC**

                               /s/Aryan Behnamjou
                               _____
                               Kaveh Navab, Esq.
                               Aryan Behnamjou, Esq.
                               *Attorneys for Plaintiffs* ARTHUR JAMES and
                               STACEY ABBOTT

1  **<u>DEMAND FOR JURY TRIAL</u>**

2     Plaintiffs ARTHUR JAMES and STACEY ABBOTT hereby demand that

3  this action be tried in front of a jury.

4

5  DATED: February 6, 2026   **WEST COAST TRIAL LAWYERS, APLC**

6              **NAVAB LAW, APC**

7

8             /s/ Aryan Behnamjou

              Kaveh Navab, Esq.

9             Aryan Behnamjou, Esq.

              *Attorneys for Plaintiffs* ARTHUR JAMES;

10            STACEY ABBOTT

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28